### KETON v. PATTON et al.   (No. 6354.)

(Court of Civil Appeals of Texas. Austin. June 29, 1921.)

1. **Landlord and tenant** ⚌199½—**Closing of bakery by authorities for bad sanitary conditions held not to excuse nonpayment of rent.**

Where tenant's bakery was closed by government military authorities, because of bad sewerage and water connections, and bad ventilation, the tenant is not released from paying rent, unless he proved that the order closing the bakery was permanent, and not temporary, and condition on improving the bad conditions, and that to put the place in repair would have involved a prohibitive expense to him.

2. **Landlord and tenant** ⚌152(4)—**Lease held to require tenant to abate a nuisance at his own expense.**

Where a lease provided that the lessee should execute and fulfill all orders and requirements imposed by the board of health, sanitary, and police departments for the correction and abatement of nuisances at his own expense, the spirit of this clause required that the tenant should at his own expense abate the nuisance of bad ventilation and bad water and sewer connections, on account of which his bakery was closed by the federal military authorities.

3. **Landlord and tenant** ⚌170(2)—**Failure of tenant to notify landlord of nuisance releases landlord from obligation to abate nuisance.**

Where the landlord is under a duty to make changes to abate a nuisance caused by bad sewerage connections, bad water connections, and bad ventilation, failure of the tenant to notify the landlord of the premises having been closed by the government excuses the landlord for failure to abate the nuisance.

4. **Landlord and tenant** ⚌230(3)—**Claim of tenant for reimbursement on account of use of his light meter by other tenants held not sufficiently pleaded.**

In an action for rent, the answer alleged that the lessors represented to defendant that separate electrical meters were provided for the several tenants, and that, relying on that fact, he paid the light bills of other tenants; that on discovery of the mistake he notified the lessors, and requested them to protect him. There was no allegation that the alleged representations of the lessors as to separate meters were untrue, or that the lessors promised to reimburse the tenant. *Held*, that the answer was insufficient to warrant recovery by way of counterclaim.

⚌For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from McLennan County Court; Jas. P. Alexander, Judge.

Action by A. C. Patton and others against Frank Keton. From a judgment for plaintiffs, defendant appeals. Affirmed.

G. W. Barcus and Alva Bryan, both of Waco, for appellant.

Sanford & Harris, of Waco, for appellees.

BRADY, J. By a written lease appellant rented from appellees a building in the city of Waco, for a term of two years, at $110 per month for the first year, and $120 a month for the second year, with a provision for extension of the lease for an additional year. The date of the lease was February 15, 1916, and the tenancy began under this lease March 1, 1916. The contract provided that the premises were to be occupied as a bakery and not otherwise.

Appellant defended specially upon the grounds that, after he had abandoned the premises, appellees took possession thereof and rented the same to another man by the name of Rich, and further that appellees were not entitled to recover, because, after the premises were rented to appellant, an army camp was established at Waco, and that by reason of the unsanitary condition of the sewerage connections, water connections, and ventilation that the building was condemned, and, by order of the federal authorities, he was forced to close his bakery, and appellees refused to put the building in condition to meet the demands of the military authorities before it would be permitted to be further occupied as a bakery.

Appellant also pleaded by way of cross-action, and as an offset to the rental claim, an item of $85, which it was claimed he had paid for the benefit of appellees to the Texas Power & Light Company, for light which was used by tenants on the floor above, and which he had been caused to pay by reason of the misrepresentations of appellees, and their negligence in the manner of connecting the meter upstairs with the meter below.

The case was tried without a jury, and the court rendered judgment for appellees for the sum of $240, the amount sued for, with interest; the same being the balance claimed for the rent for the months of January and February, 1919. The questions chiefly presented on this appeal may be summarized in the claim of appellant that, the government, through no fault of his, having ordered his bakery closed because of the unsanitary condition occasioned by the faulty construction of the sewerage connections, water connections, and ventilation, he was discharged from performance of the contract, and was not further liable upon the lease.

[1] Founded upon the old maxim that as a person binds himself so shall he be bound, it

is the general rule that subsequent impossibility of performance does not discharge a party to a contract. It is also the general rule that a contract is not invalid, nor is a promisor discharged, merely because it turns out to be difficult, unreasonable, dangerous, or burdensome. 9 Cyc. 625. There is, however, a well-considered line of cases holding that there is an exception to the general rule that subsequent impossibility of performance does not discharge, where the performance is rendered impossible by law, either by reason of (a) a change in the law; or (b) because of action taken by or under the authority of the government. 9 Cyc. 630. The same authority, however, states that the exception does not apply where the impossibility created by law is only temporary, or where the change merely makes performance more burdensome. 9 Cyc. 631. See, also, 13 Corpus Juris, 646, § 720 (E).

While counsel for appellee dispute the existence of the rule of law claimed by appellant, and also contend that the facts were disputed as to the cause of closing the bakery, and that the trial court's implied conclusion as to the cause is binding on us, we shall assume that the rule contended for by appellant is correct, and also that it was sufficiently shown that the bakery was closed under the authority of the government, as a military measure. However, we have reached the conclusion that appellant has not shown himself entitled to the benefit of the exception stated, for at least three reasons:

(a) It was not shown that the order closing the bakery was not merely temporary. The facts show that appellant occupied the premises until some time in June, and paid the rent to January 1, 1919; the notice requiring him to close the bakery having been posted in June. As far as the evidence discloses, if it be conceded that there was impossibility of performance at all, it may have been but temporary, since permission to continue the bakery would have been given, had the nuisance been abated.

(b) It was not in fact shown that performance was rendered impossible by the action of the authorities. At most, it was established that appellant's use of the premises as a bakery was rendered more burdensome and expensive by reason of the demands of the military authorities or food administration. Appellant's own testimony shows that he himself considered the advisability of making the changes demanded, and having the plumbing changed and connections made, so that he could continue to conduct the bakery, but that his investigation disclosed the changes would be "too expensive to tackle." There is no evidence of what the cost would have been, nor the relative expense to appellant as compared with his rental for the remainder of the lease, which would have amounted to about $1,000. To bring himself within the exception, it was incumbent upon appellant to at least prove that the expenditure would have been prohibitive. This he did not do. It may be that the clause in the contract requiring him to make repairs did not of itself compel him to make the changes indicated, but certainly before he could claim impossibility of performance he was required to show a state of facts amounting to more than a mere increased burden and expense, regardless of the express stipulations of his contract.

[2, 3] (c) Paragraph 3 of the lease contract is as follows:

"That the lessee shall promptly execute and fulfill all the ordinances of the city corporation, applicable to said premises, and all orders and requirements imposed by the board of health, sanitary and police departments, for the correction, prevention, and abatement of nuisances in or upon or connected with said premises during the said term, at his own expense."

The spirit of this clause of the contract, we think, if not its letter, required appellant to correct and abate the nuisances complained of by the military authorities at his own expense. This was a sanitary and health measure, and we believe it falls fairly within the spirit of the contract. Furthermore, the evidence of appellees, which the court was privileged to accept, was to the effect that they never heard of appellant's having been closed up by the government until long afterwards, and that he did not notify them. Hence, if appellees were under any duty to make the changes and to abate the nuisance, appellant gave them no opportunity to do so, and no information upon which to act.

It follows, from these conclusions, that the judgment for appellees should stand.

[4] As to the cross-action of appellant, we shall assume that the evidence shows that appellees would be liable for this item upon legal or equitable principles, which, however, are not clearly disclosed by the argument. Nevertheless the presence alone of evidence in the record showing liability will not suffice. It is fundamental that there must be a sufficient pleading to support the claim. A careful scrutiny of the answer does not show that a cause of action for the light bills paid by appellant and claimed as an offset was pleaded. It is alleged that appellees had the building wired with electric wires during the time he occupied the same, and represented to him that there were separate and distinct meters to care for the electricity used by the several tenants, and that appellant believed and relied upon these representations. Yet he does not allege that the representations were untrue. He further avers that, at the time he paid the light bills of other tenants, he did not know that fact, and would not have paid the same, had he known it, and that he immediately notified plaintiffs of the

payment, and requested them to protect him. He does not allege any agreement on the part of appellees to protect or reimburse him. Indulging the utmost liberality to this pleading, it does not disclose allegations of fact sufficient to be the basis of a recovery. Therefore the court did not err in finding against the cross-action.

No reversible error having been shown, the judgment is affirmed.

Affirmed.