Abraham N. Geller, J.
The question involved in this action for a declaratory judgment is as to which party is obligated to make the substantial alterations and additions required by the Board of Standards and Appeals as conditions to its granting of a variance permitting the continued use of the premises for the sale and storage of lumber.
Plaintiff purchased in 1956 from defendant Advance Lumber, Inc. (Advance) the lumber business conducted by Advance in premises owned by defendant Evador Holding Corp. (Evador), both of these corporations being controlled and managed by Isidore Bregman, since deceased, whose executors and trustees have been joined as defendants (hereinafter referred to as Bregman). As part of the transaction a 10-year lease of the premises, with privilege of renewal and option to purchase the property, was given to plaintiff by Evador, together with certain covenants by Evador and Advance. In 1958 and 1960 two violations were placed on record by the Building Department— one involving the failure to obtain a permit for the erection of the frame building, and the other the cutting and storing of lumber in a frame building in an area not permitted by the Zoning Resolution.
Defendant Evador’s application to permit the continued use of the building for sale and storage of lumber stated that it proposed to improve the condition by doing certain work and filling in certain incombustible material. The board granted a variance as to such use on condition not only that the work set forth in the drawings filed with the application be done but on the further condition that a new rear wall of brick masonry be constructed, that the location of the two power saws in the *159 building be rearranged, and that a sprinkler system be installed throughout the building. Evador thereupon made demand upon plaintiff to proceed with said work. None of the work has been performed by any of the parties. Plaintiff commenced this action for a judgment declaring that defendants are obligated to so perform.
Such obligation cannot be based merely on the provision in the agreement between the parties that Advance (identifying itself with Evador) agreed to remove at its own cost and expense any violation as of that date, even though the condition giving rise to the subsequent notices of violation may have existed at that time (Liebmann v. Aldhous, 105 Misc. 728).
Nor does the obligation fall on plaintiff merely by reason of the fact that it agreed to make all repairs except roof repairs and that its lease contained the usual provision that “ the tenant will comply with all the requirements ” of the governmental authorities applicable to said premises. The items of work to be done were not repairs. The sprinkler system represented an addition, while the other items constituted structural alterations.
It has been said that ordinarily a tenant is not to be charged with the expense of making permanent structural changes required by the authorities, that the landlord may not shift that burden to the tenant unless such intention is plainly discoverable from the lease and the circumstances involved (Herald Sq. Realty Co. v. Saks & Co., 215 N. Y. 427). It has also been pointed out that the fact that the changes are of a structural character is not always decisive of landlord’s responsibility therefor (Holden v. O’Brien, 209 App. Div. 266, 269, affd. 240 N. Y. 560); and that the controlling consideration is not the extent or structural character of the change required but the intent of the parties as expressed in the lease interpreted in the light of the surrounding circumstances (Deutsch v. Hoe Estate Co., 174 App. Div. 685).
In Cohen v. Bass, Inc. (246 N. Y. 270, 277) the court analyzed the lease as whole, particularly the length of the term and the cost of the changes as compared with the rental reserved, in ascertaining “ the fair intent and meaning of the lease.” The guiding rule was set forth (p. 277): “ We seek the intention of the parties, not so much from the letter of the lease as from a reasonable construction of their agreement, having in mind the rent payable, the terms of the lease, the nature of the construction required, the relative benefit thereof to the respective parties, and what the parties had in contemplation when they executed this agreement,”
*160 It is a particular combination of such factors or the persuasiveness of a particular factor which has led the courts to fix responsibility upon either the landlord or the tenant. (See, e.g., Warrin v. Haverty, 159 App. Div. 840, and Younger v. Campbell, 177 App. Div. 403, holding tenant not obligated to make structural changes; and Frank v. Bowman Auto. Co., 195 App. Div. 377, affd. 233 N. Y. 584, and Deutsch v. Hoe Estate Co., supra, holding tenant obligated to make structural changes.)
We turn, then, to the facts of this case, which were in the main conceded.
Evador hired the architect and consulting engineers to process its application to remove the violations at a cost to it of $5,000. It was stipulated that the cost of all of the work to be done to comply with the resolution of the board, exclusive of the sprinkler system, was $9,850. Expert testimony would indicate that the cost of the sprinkler system might range from a low of $1,500 (defendants’ expert) to a high of $7,700 (plaintiff’s expert), depending on the type required by the Building Department for this building.
The agreement made in 1956 between plaintiff and Advance provided for payment of $5,000 by plaintiff for the fixtures of Advance’s lumber business; and for payment at cost or market price, whichever was lower, for all of the lumber in the yard, represented by monthly installment notes over a period of six years, all of which have now been paid. Advance agreed to deliver to plaintiff on the closing (about 10 days later) a lease covering the premises for 10 years at an annual rental of $3,000, with an option to renew for an additional 10-year period, and an option to purchase the premises for $20,000 — $10,000 in cash and $10,000 by a purchase-money mortgage to run for 10 years — exercisable at any time after full payment of the installment notes. The lease executed by Evador and given to plaintiff at the closing incorporated all of these terms and conditions of the agreement with Advance.
Advance also agreed to furnish on the closing an affidavit that possession had been “peaceful and undisturbed for a period of 35 years. ’ ’ The affidavit executed by Isidore Bregman recited that it was being given to plaintiff with the knowledge that it was purchasing the lumber business of Advance and leasing the premises from Evador for a valuable consideration and was relying on Ms statement as to ownership and possession. He stated therein that he had been the record owner of this property in 1922; that he had obtained approval of a building on the entire width and length of said property for the storage of lumber in connection with the retail sale thereof; and that *161 continuous possession by him and by Evador, as well as by Advance in using said premises for that purpose, had been peaceful and undisturbed.
The statement as to approval of the building erected must be deemed to be erroneous, since there is no record of a permit covering the structure as such. Plaintiff does not claim fraud and the error may have been due to the following sequence of events. In 1922 an application was approved for the erection of a shed for the sale and storage of lumber, followed by an amendment to provide an office, and by another application in 1925 for another shed. Thereafter, the two sheds and the driveway between them were roofed over with asbestos siding attached to exterior walls to enclose the entire premises as one building, but no permit to so enclose was found on record at the time of the notice of violation in 1958.
The Board of Standards and Appeals took into consideration this violation together with the 1980 zoning violation and disposed of both matters in one resolution, granting a variance to permit the continued use of the building for the sale and storage of lumber on the conditions therein specified.
With the exception of the sprinkler system, the items of work to be performed are traceable to the failure to obtain legalization of the existing structure for use in a lumber business. Plaintiff’s concern about this matter is evident from its insistence upon Bregman’s affidavit, despite the fact that it could not find any violation on record. Considering the agreement, lease and affidavit as integral parts of one transaction, plaintiff procured in effect a warranty, the breach of which is attributable to defendants. It is reasonable to hold that the parties are deemed to have had in contemplation that responsibility for any alteration and reconstruction work on the building required to legalize its use for the storage and sale of lumber would fall on Evador. Indeed, Evador must be deemed to have recognized such obligation by its retainer of an architect and consulting engineers to process its application “ to legalize the existing structure ” and, even more so, by its proposal as owner to do certain items of work in accordance with drawings filed with the application. It is apparent that it was only when the board required more substantial work, particularly the construction of a new rear wall of brick masonry, that it stopped short and sought to shift responsibility to plaintiff.
The installation of a sprinkler system, however, represents a facility, a subsequent addition, required by the board. Taking into consideration the lease provision requiring tenant to comply with governmental orders applicable to the property, as well *162 as plaintiff’s privilege of renewal and its option, presently exercisable, to purchase the property, it is reasonable to impose responsibility therefor under all the circumstances of this case on plaintiff. It would be unreasonable, in view of the option to purchase, to have the burden for this addition as well as the structural alterations, fall on Evador, all of which would then immediately inure to plaintiff’s benefit. .
Although responsibility for the alterations falls in the first instance on Evador as owner of the property, Advance, by virtue of the nature of the commitment assumed by it in complete identification with Evador, is likewise obligated. Such declaratory relief may not, however, be granted with respect to Bregman. No liability would, in any event, arise merely from his control of these corporate entities. Liability, if any, arising from that part of the affidavit executed by him, which stated erroneously that he as record owner had received approval for the erection of the building, could only be for such damages as plaintiff could establish in an action therefor. This complaint for a declaratory judgment is accordingly dismissed as against him.