**Joseph SCHWARTZMAN, Plaintiff,**

v.

**Max WEINER and Dorah Weiner, his wife, Defendants.**

Superior Court of Delaware, New Castle.

April 16, 1974.

John S. Grady, Bader, Dorsey & Kresh-tool, Wilmington, for plaintiff.

B. Wilson Redfearn, Tybout, Redfearn & Schnee, Wilmington, for defendants.

## OPINION

BUSH, Judge.

This is a negligence action brought by Joseph Schwartzman, plaintiff, for injuries sustained in a fall from the front porch of premises he leased from Max and Dorah Weiner, defendants. In his complaint plaintiff alleges that the fall was caused by defects in the front porch and steps of the leased premises. Plaintiff now moves to amend his complaint by adding a paragraph which alleges that the defendants violated certain provisions of the Housing Code of the City of Wilmington. This is the Court's decision on that motion.

Preliminarily, the Court notes that plaintiff's motion is ostensibly one to amend the complaint. The parties have determined to test the legal sufficiency of the proposed amendment at this time and to this end have argued matters outside the pleadings. Hence, the Court interprets this motion as one for partial summary judgment on the question of the applicability and effect of the municipal ordinances contained in plaintiff's proposed amendment.

The relevant facts are as follows: On February 6, 1972, plaintiff fell while attempting to descend the wooden steps of a porch. The incident occurred on premises presently owned by the defendant, Dorah Weiner, and leased by the defendants to the plaintiff for a continuous period since 1957. It appears that at least two leases were executed during this period. The terms of each lease are, for all intents and purposes, identical. Under each lease plaintiff is permitted to use the premises for business and residential purposes. The current lease, executed in 1969 and effective on the day of the incident in question, provides as follows:

"The Lessor agrees to assume responsibility for all roof and structural repairs, all exterior repairs, and all major repairs of the plumbing and heating systems, which shall become necessary during the term herein granted." (Lease, Paragraph 3)

The lease further states:

"Lessee agrees, at his own expense, to promptly comply with all requirements

of any legally constituted public authority made necessary by reason of Lessee's occupancy of the premises." (Lease, Paragraph 16)

Plaintiff's proposed amendment alleges violations of section 34–56(a) and (b) of the Housing Code of the City of Wilmington. Section 34–56(a) requires that "every flight of stairs and porch" of a dwelling or dwelling unit be "free of holes, grooves and cracks which are large enough to constitute possible accident hazards." 2 Wilm.C. § 34–56(a). Section 34–56(b) requires that a handrail be placed on "every flight of stairs which is more than two risers high." 2 Wilm.C. § 34–56(b).

Plaintiff contends that section 34–56(a) and (b) are applicable to the leased premises, that each provision sets forth a standard of care, binding on the defendants, and that the defendants' failure to comply with these provisions constitutes negligence per se. The defendants, conversely, argue that section 34–56(a) and (b) are inapplicable since the premises were constructed prior to the enactment of the Housing Code provisions, that, notwithstanding their applicability, paragraph 16 of the lease effectively places the burden of compliance thereto on the plaintiff, not the defendants, and that the violation of the provisions, in any event, does not constitute negligence per se.

■ The Court finds no merit to defendants' threshold argument that the Housing Code provisions are inapplicable because the construction of the subject premises preceded the enactment of section 34–56(a) and (b). That section makes no distinction between existing dwellings and future dwellings. Instead, section 34–56 reads in absolute terms: "no dwelling or dwelling unit shall be deemed to comply with the requirements of this chapter relating to stairs and porches unless . . . ." 2 Wilm.C. § 34–56. Equally inclusive is the Code's definition of the term "dwelling" set forth in section 34–1. Dwelling is defined therein as "any house or building

or portion thereof which is used or intended to be used in whole or in part as a home, residence or sleeping place of one or more human beings, either permanently or transiently." 2 Wilm.C. § 34–1.

It appears reasonably clear that this reference to "any" house or building is indicative of a legislative intent to bring "all" dwellings, both existing and future, into compliance with the provisions of the Housing Code. A contrary interpretation by the Court would have the effect of removing from the operation of the Code every house or building constructed prior to 1962, the year that the Code was enacted. Such a finding would seriously curtail implementation of the Code's essential purpose of "safeguarding the health and safety of the occupants of dwellings and of the general public." 2 Wilm.C. § 34–6. See Finnegan v. Royal Realty Co., 35 C.2d 409, 218 P.2d 17 (1950). The Court, therefore, is impelled to conclude that section 34–56(a) and (b) of the Housing Code are applicable to the leased premises in this case, notwithstanding the fact that these premises were erected prior to the enactment of the Code.

The next issue raised by the parties is whether the obligation to construct a handrail in accordance with section 34–56(b) falls on the plaintiff or the defendants. Defendants argue that paragraph 16 of the present lease places the burden of complying with all such ordinances on the lessee, plaintiff. This paragraph was also contained in the original lease executed in 1957. Plaintiff, on the other hand, argues that paragraph 3 places the responsibility on the defendants-lessors for structural repairs, such as the construction of a handrail, and that to the extent that there is a conflict between paragraphs 16 and 3, the latter, being the more specific provision, is controlling. The crux of this matter, therefore, lies in the construction of the various covenants of the applicable lease.

■ The Court's function in construing a lease is to ascertain and give effect

to the mutual intention of the parties as manifested by its term. Bogutz v. Margolin, 392 Pa. 151, 139 A.2d 649, 651 (1958); 51 C.J.S. Landlord and Tenant § 232(2). Where the meaning of terms in a lease are clear, such terms are construed according to their common and ordinary meaning. Lott v. Guiden, 205 Pa.Super. 519, 211 A. 2d 72, (1965). However, in case of ambiguity, the general rule is that a lease is construed against the lessor. Paul v. Paul's Liquor Store Company, Del.Supr., 217 A.2d 197, 199 (1966). See also 49 Am.Jur.2d, Landlord and Tenant, § 144. Moreover, in construing a lease to ascertain the parties' intent, the Court must, whenever possible, give effect to all its provisions. Roffman v. Wilmington Housing Authority, Del.Supr., 179 A.2d 99, 102 (1962). And, inasmuch as two provisions of a lease appear inharmonious, effect should nevertheless be given to both if, by according to them a reasonable interpretation, each is reconcilable with the other. Katz v. Williams, 239 Md. 355, 211 A.2d 723, 726 (1965).

In construing the lease in the instant case, it is quite clear that paragraph 3 places the "responsibility for all . . . structural repairs and all exterior repairs" on the defendants. It is apparent, however, that the installation of a handrail, though structural in nature, does not constitute a "repair". The word "repair" means the restoration of a pre-existing, though currently defective or imperfect, structure to the condition in which it originally existed. Kaufman v. Shoe Company of America, 24 Ill.App.2d 431, 164 N.E.2d 617, 619 (1960). The installation of a handrail, where none had previously existed, is not a "repair," but rather an improvement or addition. Consequently, the covenant contained in paragraph 3 of the lease does not, as plaintiff suggests, impose a duty on the defendants to install a handrail on the front porch steps of the leased premises. This does not mean, however, that the defendants are not responsible for statutorily-required structural improvements, such as the installation of a handrail. The Court merely finds that the covenant contained in paragraph 3 is not the vehicle whereupon such a duty is imposed.

Defendants contend that plaintiff, as lessee, has the obligation to install the handrail in complicity with 2 Wilm.C. § 34–56(b) by operation of paragraph 16 of the lease. That paragraph contains a covenant under which plaintiff agreed "at his own expense, to promptly comply with all requirements of any legally constituted public authority made necessary by reason of Lessee's occupancy of (the leased) premises." However, such a covenant does not obligate the tenant to comply with alterations or improvements ordered by local authorities that are of a structural or substantial nature, in the absence of a showing that it was the intention of the tenant to assume such an obligation. Rosinski v. Jones, Ohio Mun., 174 N.E.2d 145 (1961); Belmont Hotel, Inc. v. New Jersey Title Guarantee & Trust Co., 132 N.J.L. 403, 40 A.2d 778 (1945). See generally 22 ALR3d 521, 543. That the lessor should bear the responsibility for structural changes ordered by local authorities rests upon the indisputable notion that such changes are generally permanent in nature and, therefore, ultimately inure to the owner-lessor's benefit by virtue of his reversionary interest in the premises. Rosinski v. Jones, supra, 174 N.E.2d at 147. Consequently, a lessee will be obligated to incur the expense for improvements, alterations or repairs of a structural or substantial nature only where there is a clear expression of his intent to do so, notwithstanding his agreement to comply with all governmental regulations and requirements applicable to the leased premises. Nevins v. Fine Cars, Inc., 36 Misc.2d 451, 233 N.Y.S.2d 74, 76 (1962).

Construing the lease in its entirety, it appears that it was not within the contemplation of the parties that plaintiff assume the responsibility for the structural repairs

and the structural changes ordered under section 34–56(a) and (b) of the Housing Code. First of all, section 34–56(a) pertains to structural or exterior repairs and the responsibility for such repairs falls on defendants by operation of the specific covenant to repair found in paragraph 3 of the lease. Paragraph 3 of the lease serves to modify paragraph 16 to the extent that the municipally-ordered repairs are exterior structural repairs.

Section 34–56(b) of the Housing Code requires the installation of a handrail on the exterior porch steps. Although the addition of a handrail constitutes a structural change as opposed to structural or external repair, the defendants are nevertheless responsible for such changes. Paragraph 4 of the lease, though inconclusive in and of itself, is helpful in arriving at the intent of the parties on this point. Paragraph 4 prohibits the plaintiff from making "any alterations, changes or removals without having first obtained the written consent of the Lessors." This paragraph is at least indicative of an intent by the parties that the defendants, as lessors, have the ultimate control over any changes made to the leased premises.

The cases cited by the defendants, wherein the lessee was held responsible for structural repairs or structural changes to the leased premises by virtue of his agreement to comply with all regulations of a public authority turn, for the most part, on the particular circumstances involved in these cases. In Evans Theatre Corporation v. DeGive Investment Co., 79 Ga.App. 62, 52 S.E.2d 655 (1949), the court required the lessee to make certain municipally-ordered structural changes in accordance with a covenant requiring lessee "to comply with all city ordinances and public laws applicable to said leased premises." The lease in that case, however, was for a term of sixty years and the court's decision rested on its finding that the tenant was the owner of an estate for years. The Court also noted that the lease gave the tenant unrestricted use of the premises; for example, the tenant could make alterations, additions and improvements on the premises or, if it desired, demolish any buildings thereon. Finally and most significantly, the Court recognized that the tenant, by virtue of his estate for years, was for "all intents and purposes the owner with unqualified possession" and that under Georgia statutory law "a tenant for years is bound for all repairs or other expense necessary for the preservation and protection of the property."

*Evans Theatre Corporation* is manifestly inapplicable to the case at bar. Here, plaintiff is a tenant under a lease for a five-year term. Neither the renewal option nor the purchase option elevates plaintiff's interest in the premises to that of an owner of an estate for years. 49 Am.Jur. 2d, Landlord and Tenant, § 372; Phillips Petroleum Co. v. Omaha, 171 Neb. 457, 106 N.W.2d 727 (1960). Moreover, the lease does not give plaintiff the unrestricted use of the premises. For example, the defendants, as lessors, have the right to terminate the lease in the event that plaintiff uses the premises for a business purpose other than that of a grocery store, and plaintiff is prohibited from making any alterations, changes or removals without having first obtained the written consent of the defendants.

The other cases cited by defendants likewise involved circumstances different from those involved in the present case. In Strecker v. Barnard, 109 Cal.App. 149, 240 P.2d 345 (1952), the Court required the lessee to install safety equipment on an elevator in accordance with its covenant to comply with all Municipal, State and Federal requirements "pertaining to said premises, occasioned by or affecting the use to which said premises have been, are being, or are to be put by the lessee." The lease in *Strecker*, however, also contained a provision requiring the lessee to maintain the elevator in "good order and condition," and therefore, it was reasonable for the Court

to find that the intent of the parties was to obligate lessee to comply with municipally-ordered changes to the elevator. In the instant case the Court can find no similar covenant upon which to rely to support a finding that the intent of the parties was to place the responsibility on plaintiff to comply with municipally-ordered structural improvements to the front porch of the leased premises. In fact, the intent of the parties appears to be to the contrary in light of the lessors' specific covenant to make structural and exterior repairs contained in paragraph 3 of the lease.

Keton v. Patton, Tex.Civ.App., 233 S.W. 128 (1921), also relied upon by the defendants, is distinguishable on the ground that the covenant involved there, which required the lessee to comply with "all orders and requirements imposed by the Board of Health," was clearly more specific than the covenant in the instant case. Finally, although the decision in Ben's Lumber Yard, Inc. v. Evador Holding Corp., N.Y.Supr., 38 Misc.2d 157, 238 N.Y.S.2d 128 (1963), lends some support for defendants' position herein, this Court disputes the rationale of the New York Court that it is unreasonable, in view of an option to purchase, to place the burden of complying with municipally-ordered structural alterations on lessors simply because such changes immediately inure to the lessee's benefit. First of all, it is well settled that so long as an option to purchase contained in the lease remains unexercised, the lease remains in full operation and effect, with all the incidents and implied obligations which result from the relation of landlord and tenant. 49 Am.Jur.2d, Landlord and Tenant, § 372. Secondly, a structural change or improvement to a leasehold always inures to the immediate benefit of the lessee who occupies the premises, but this fact is equalized by the lessor's reversionary interest in the premises, a circumstance which this Court finds no less compelling. In short, the Court does not view an unexercised purchase option nor the fact of immediate benefit of structural improvements as a sufficiently compelling basis upon which to conclude that the "clear expression of intent" of the parties was to place the responsibility on lessee to make structural additions or improvements.

The Court finds, therefore, that the responsibility for complying with section 34–56(a) rests with defendants since that section purports to order structural or external repairs and defendants specifically convenanted to make such repairs under paragraph 3 of the lease. Since there is no clear expression of intent to the contrary, the Court also finds that defendants are obligated to comply with the structural changes and additions required by section 34–56(b), the handrail ordinance.

Defendants' final contention is that the plaintiff's motion to amend his complaint should be denied because the provisions of the Housing Code relied upon by plaintiff, even if applicable, do not render the defendants' negligent as a matter of law. It is well-established law in this State, however, that the violation of a statute or ordinance enacted for the safety of others is negligence per se. Sammons v. Ridgeway, Del.Supr., 293 A.2d 547, 549 (1972); Nance v. Rees, Del.Super., 2 Storey 533, 161 A.2d 795, 797 (1960). So long as a municipal ordinance has the force and effect of law and embodies a standard of conduct designed to protect from injury or harm a class of persons of which the plaintiff is a member, a violation thereof constitutes negligence per se. 57 Am.Jur.2d, Negligence, § 269.

The Housing Code of the City of Wilmington was duly enacted and its provisions have the force and effect of law. 7 McQuillen, Municipal Corporations, § 24.507. It becomes abundantly clear from a review of the Housing Code that its essential purpose is to safeguard "the health and safety of the occupants of dwellings and of the general public." 2 Wilm.C. § 34–6. Equally evident is the fact that its provisions are designed to establish certain

minimum standards governing the condition and maintenance of dwellings, the violation of which may constitute negligence in itself. See Panaroni v. Johnson, 158 Conn. 92, 256 A.2d 246 (1969); Finnegan v. Royal Realty Co., supra. See also 49 Am.Jur.2d, Landlord and Tenant, § 809. Finally, it is apparent that plaintiff is a member of the class for whose protection the Housing Code was enacted and that the defendants are persons bound to conform to the minimum standards thereunder imposed. Therefore, to the extent that section 34–56(a) and (b) were violated by the defendants in the instant case, such violations constitute negligence per se.

Accordingly, plaintiff's motion to amend his complaint is granted and defendants' motion for partial summary judgment is, in all respects, denied.

It is so ordered.