Doug OWENS and Rose
Owens, Plaintiffs,

v.

**PROCESS INDUSTRIES, INC., E.I.
DuPont de Nemours & Co.,
Defendants.**

Civ. A. No. 87–461–JLL.

United States District Court,
D. Delaware.

Aug. 7, 1989.

---

Eric M. Doroshow of Doroshow, Pasquale & Linarducci, Wilmington, Del., for plaintiffs.

Richard W. Pell and Sherry Ruggiero of Tybout, Redfearn & Pell, Wilmington, Del., for defendant Process Industries, Inc.

Richard Allen Paul of E.I. DuPont de Nemours & Co., Inc., Wilmington, Del., for defendant E.I. DuPont de Nemours & Co.

## MEMORANDUM

LATCHUM, Senior District Judge.

## I. INTRODUCTION AND BACKGROUND

Plaintiffs, Doug and Rose Owens, have brought this action against defendants Process Industries, Inc. ("Process") and E.I. DuPont de Nemours & Co. ("DuPont") to recover damages for alleged injuries to Doug Owens and for Rose Owens' alleged loss of consortium. (Docket Item ["D.I."] 1.)[1] Presently before the Court are motions by DuPont and Process for partial summary judgment.

The complaint alleges the following. On October 16, 1985, Doug Owens was operating a backhoe for Process at a DuPont job site pursuant to an agreement between

---

**1.** Jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332. Plaintiffs are citizens of Kentucky. (D.I. 1.) Both DuPont and Process are Delaware corporations. (*Id.*)

Process and his employer, Guardian Construction Company ("Guardian"). (D.I. 1, ¶ 8.) Under instructions from Process, Mr. Owens was attempting to locate a steam leak when he stepped across a drainage ditch in an excavated pit and onto a 1' × 10' plank. (*Id* at ¶ 9.) The plank turned causing him to lose his balance, and he grabbed a shoring brace to regain his balance. (*Id.*) The brace gave way striking him in the neck and upper back causing him to fall into the drainage ditch which contained hot water (approximately 144°F.). (*Id.*) The shoring was constructed by Process, and consisted of 4' × 8' plywood sheeting set flush with the lower 8' sides of the pit. (*Id.* ¶ 10.) No vertical studs supported the plywood sheeting, but there were three cross members wedged in place to hold up the sheeting. (*Id.*) No shoring of any type was constructed on the upper 16' of the pit. (*Id.*)

Based on these allegations, Plaintiffs allege that Process was negligent in that: (a) it failed to properly provide sheeting and shoring in the excavated pit, necessary to protect Mr. Owens, in violation of the Occupational Safety and Health Administration ("OSHA") regulations § 1926.651(f) and (k); (b) it permitted water to accumulate in the pit, in violation of § 1926.651(p) of the OSHA regulations; (c) it failed to construct proper shoring and sheeting in violation of § 1926.652(b) and (c) of the OSHA regulations; (d) it failed to construct proper cross braces in violation of § 1926.652(j) of the OSHA regulations; and (e) it was otherwise negligent and careless in constructing the sheeting and shoring and in the excavation of the steam leak. (*Id.* ¶ 11.)

Plaintiffs also allege that DuPont conducted two safety inspections on the excavated pit prior to Mr. Owens' fall, thus misleading him into believing the pit was properly shored and sheeted to prevent his injury. (*Id.* ¶ 13.) Plaintiffs allege that DuPont was negligent in that: (a) it conducted safety inspections in a casual and cursory manner, in violation of the OSHA regulations; (b) it was negligent in failing to conduct competent daily safety inspections, in violation of § 1926.650(i) of the OSHA regulations; and (c) it was otherwise negligent and careless in failing to use due care in maintaining the construction site. (*Id.* ¶ 14.)

There are several facts that are not disputed. In 1985 Process contracted with DuPont to locate and repair several underground steam lines at DuPont's Stine–Haskell Laboratory near Newark, Delaware ("Stine"). (D.I. 45 at 3.) Process subcontracted with Guardian to do the excavation work, and Doug Owens was employed by Guardian to operate a backhoe on this job. (*Id.*) On October 16, 1985, Mr. Owens entered a pit excavated to locate a steam leak. (*Id.*) Upon reaching the bottom of the pit he stepped on a board to avoid hot water which had accumulated at the bottom of the pit from the steam leak. (*Id.*) As he stepped on the board, he lost his balance and reached overhead for a shoring brace which had been installed in the pit. (*Id.*) The brace gave way, and he fell into the hot water and sustained personal injuries. (*Id.*)

## II. DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT

Before the Court are separate motions by Process and DuPont for partial summary judgment under Fed.R.Civ.P. 56. Process has moved for summary judgment on the allegations that it failed to construct proper sheeting and shoring in violation of § 1926.652(b), (c) and (j) of the OSHA regulations, that it failed to provide proper sheeting and shoring in violation of § 1926.651(f) and (k) of the OSHA regulations, and that it permitted water to accumulate in the excavation pit in violation of § 1926.651(b) of the OSHA regulations.[2] (D.I. 51.) DuPont has moved for summary judgment on the allegations that it failed to conduct competent daily safety inspections in violation of § 1926.650(i) of the OSHA regulations, and that it conducted safety inspections in a casual and cursory manner

---

2. Process' summary judgment motion refers to "§ 1926.651(b)," but the complaint refers to "§ 1926.651(p)." The Court assumes there is a typographical error in Process' motion and form of order.

in violation of § 1926.651(f), (k) and (p) and § 1926.652(b), (c) and (j) of the OSHA regulations. (D.I. 49.) After having considered the written submissions of the parties and having held oral argument on August 4, 1989, the Court's disposition of the motions is set forth below.

Summary judgment is appropriate only if there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). The nonmoving party, here Plaintiffs, need only demonstrate the existence of a genuine issue of material fact in order to avert summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). Yet Plaintiffs cannot merely rest upon the allegations contained in their complaint to establish such a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Summary judgment must be granted unless Plaintiffs can adduce evidence which, when considered in light of their burden of proof at trial, could be the basis for a finding in their favor. *See J.E. Mamiye & Sons, Inc. v. Fidelity Bank*, 813 F.2d 610, 618 (3d Cir.1987) (Becker, J., concurring).

### A. *Process' Motion*

In support of its motion, Process argues that there is no evidence that defendants in this case owed Mr. Owens "a duty to erect a cross brace sufficient to support the weight of a man," and that "[f]urthermore, the OSHA violations alleged by ... Plaintiffs have no nexus to the injuries" sustained by Mr. Owens. (D.I. 51 at 3.) More particularly, Process argues that Plaintiffs "bear the burden of proving that the sheeting and shoring did not conform to OSHA standards and must further prove that the violation of OSHA standards proximately caused the injury." (*Id.* at 4.) In this regard, Process argues that "[t]he purpose of the shoring was to hold back the sides of the excavation to prevent the earth from caving in," but that the accident occurred when Mr. Owens lost his balance, slipped and fell, and reached for a cross brace

overhead. (D.I. 51 at 8.) Therefore, Process argues, Plaintiffs have failed to sustain their burden of proof on an essential element of their case, namely, that Mr. Owens' injuries "would not have occurred 'but for' Process' failure to install the cross brace in conformity" with § 1926.652(j) of the OSHA regulations. (*Id.* at 9.)

■ The sole basis for the Court's jurisdiction in this case is diversity of citizenship under 28 U.S.C. § 1332. Note 1 *supra*. Therefore, the Court will apply the law that would be applied by a court in the State of Delaware. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). This being an action in tort, the injury having occurred in Delaware, and both Process and DuPont being Delaware corporations, Delaware substantive law controls. *See Ricci v. Quality Bakers of America Cooperative, Inc.*, 556 F.Supp. 716, 719 (D.Del. 1983); *see also* Restatement (Second) Conflict of Laws § 145 (1971). *Cf. McDermott, Inc. v. Lewis*, 531 A.2d 206, 215–16 (Del.1987).[3]

■ Under Delaware law the violation of a statute enacted for the safety of others is negligence in law or negligence *per se*. *Wright v. Moffitt*, 437 A.2d 554, 557 (Del.1981); *Sammons v. Ridgeway*, 293 A.2d 547, 549 (Del.1972). Moreover, while not specifically passed on by the Delaware Supreme Court, the Superior Court has consistently held that violation of Delaware's OSHA regulations by a party bound to implement them can be negligence *per se*. *Rabar v. E.I. DuPont de Nemours & Co.*, 415 A.2d 499 (Del.Super.1980); *see also Crawford v. Gilbane Building*, C.A. No. 83C–SE–6, 1986 WL 13083, LEXIS op. at 1–2 (Del.Super. Nov. 10, 1986) (States library, Del. file). In fact, this Court has previously found this to be the law in Delaware, and reiterates that finding here. *See Carroll v. Getty Oil Co.*, 498 F.Supp. 409, 412 (D.Del.1980). *See also Masemer v. Delmarva Power & Light Co.*, 723 F.Supp. 1019, 1020 n. 2 (D.Del.1989).

---

**3.** The parties have not addressed the choice of law issue in either their written submissions or at oral argument.

Process does not contend that it was not bound to implement the OSHA regulations. Rather, it argues that Mr. Owens' injuries were unconnected to any violation of them. It is not clear from this whether Process' argument is that Mr. Owens' injuries are outside of the protection afforded by the OSHA regulations or that there is no causal connection between the alleged violations and the injuries. Therefore, the Court will address each of these issues.

■ Not every injury following a violation of a regulation is a proper case for negligence *per se*. The injured party must be within "the class of persons protected" by the regulation and the "risk" of the injury must be within the regulation's "purpose." *See* W.P. Keeton et al., *Prosser and Keeton on Torts* § 36 at 224–26 (5th ed. Supp.1988). Here, it is not contended that Mr. Owens is not protected by the OSHA regulations. The question, then, is whether the risk of his injuries is within the purpose of the OSHA regulations at issue.

The Delaware Legislature rarely provides insight into its intent or the meaning of a statute beyond the statutory words themselves. In this case, the Secretary of Labor for the State of Delaware adopted by reference the Federal OSHA regulations contained in 29 C.F.R. § 1926.[4] The enabling legislation provides that:

> The Department [of Labor] may make, modify and repeal rules for the prevention of accidents or of industrial or occupational diseases in every employment or place of employment or such rules for the construction, repair and maintenance of places of employment as shall render them safe. Such rules when made shall have the force and effect of law and shall be enforced in the same manner as this chapter.

19 *Del.C.* § 106(a). The particular regulations which are the subject of Process' motion relate to construction and provision of "sheeting" and "shoring" and to accumulation of water in an excavation. Specifically, § 1926.652(b), (c) and (j) provides:

(b) Sides of trenches in unstable or soft material, 5 feet or more in depth, shall be shored, sheeted, braced, sloped, or otherwise supported by means of sufficient strength to protect the employees working within them. See Tables P–1, P–2 (following paragraph (g) of this section).

(c) Sides of trenches in hard or compact soil, including embankments, shall be shored or otherwise supported when the trench is more than 5 feet in depth and 8 feet or more in length. In lieu of shoring, the sides of the trench above the 5-foot level may be sloped to preclude collapse, but shall not be steeper than a 1-foot rise to each 1/2-foot horizontal. When the outside diameter of a pipe is greater than 6 feet, a bench of 4-foot minimum shall be provided at the toe of the sloped portion.

(j) Cross braces or trench jacks shall be placed in true horizontal position, be spaced vertically, and be secured to prevent sliding, falling, or kickouts.

Section 1926.651(f) and (k) provides:

(f) Supporting systems; i.e., piling, cribbing, shoring, etc., shall be designed by a qualified person and meet accepted engineering requirements. When tie rods are used to restrain the top of sheeting or other retaining systems, the rods shall be securely anchored well back of the angle of repose. When tight sheeting or sheet piling is used, full loading due to ground water table shall be assumed, unless prevented by weep holes or drains or other means. Additional stringers, ties, and bracing shall be provided to allow for any necessary temporary removal of individual supports.

(k) Support systems shall be planned and designed by a qualified person when excavation is in excess of 20 feet in depth, adjacent to structures or improvements, or subject to vibration or ground water.

Section 1926.651(p) provides:

(p) Diversion ditches, dikes, or other suitable means shall be used to prevent

---

4. The Federal OSHA regulations were promulgated by the U.S. Secretary of Labor under the Occupational Safety and Health Act, 29 U.S.C. § 651 *et seq.*

surface water from entering an excavation and to provide adequate drainage of the area adjacent to the excavation. Water shall not be allowed to accumulate in an excavation.

■ Process' argument apparently is that the risk of Mr. Owens' injuries is not within the purpose of the "sheeting" and "shoring" regulations, because the pit did not cave in on Mr. Owens and it has not been shown that the regulations required the shoring to support Mr. Owens. This, however, is a much too narrow view of the regulations' purpose. The enabling legislation makes clear that the regulations are to prevent accidents at places of employment and to make such places safe. *See* 19 *Del.C.* § 106(a). It would frustrate this purpose and defy common sense to conclude that the regulations required pits to be "shored" and "sheeted" to prevent cave-ins, but that the "shoring" and "sheeting" could be installed so as to, themselves, present an unsafe condition for workers in the pit. The Court concludes that, even where the legislation provides no guidance, the more reasonable approach to the issue of what risks are included in a statute's purpose is that "the accident need only be included within the same general risk, or class of risks, at which the statute is directed. Thus ... a statute may well be assumed to include all risks that reasonably may be anticipated as likely to follow from its violation." W.P. Keeton et al., *Prosser and Keeton on Torts* § 36 at 226–27 (5th ed. Supp.1988) (footnote omitted). The Court concludes that contact between workers and shoring and sheeting may reasonably be anticipated. The regulations themselves define "kickout" as an *"[a]ccidental* release or failure of a shore or brace." *See* 29 C.F.R. § 1926.653(i) (emphasis added).

Likewise, the accumulation of water in a pit presents the risk that a worker will fall into the water. If the water is hot, injuries following therefrom are certainly within the class to be reasonably anticipated.

For the foregoing reasons, the Court concludes that the risk of Mr. Owens' injuries is within the purpose of the Delaware OSHA regulations at issue.

■ There also must be a causal connection between a violation of a regulation and the alleged injuries. *Wright,* 437 A.2d at 557; *see also Blachowicz v. Pennington,* C.A. No. 85C–MY–125, 1987 WL 8662, LEXIS op. at 4 (Del.Super. Feb. 17, 1987). This, however, is separate from the requirement that the "risk" of injury be within the regulation's "purpose." *See* W.P. Keeton et al., *Prosser and Keeton on Torts* § 36 at 223–24 (5th ed. Supp.1988). The former concerns cause and effect while the latter concerns whether an act (or violation) is negligent. *Id.* The Court concludes that the requirement that there be a "causal connection" between a violation and injury simply means that the question of liability is not completely taken from the jury, though negligence is established. Rather, causation must be proved. *See also Blachowicz,* 1987 WL 8662, LEXIS op. at 4.

■ Here, it is not disputed that Mr. Owens was in the pit, lost his balance and reached for the shoring brace which became displaced upon his contact with it. The shoring brace fell as did Mr. Owens. Mr. Owens ended up in the accumulated hot water and was injured. The regulations require shoring to be properly designed and secured, and that water not be permitted to accumulate in excavations. Furthermore, Plaintiffs' expert has deposed and said, *inter alia,* that shoring should be secured so that it does not "come loose" when contacted with "force[s] that must be reckoned with in construction." (Rumpf Dep. at 58–60.)

From this, the Court concludes that there are genuine issues of fact for trial. Viewing all evidence and inferences in Plaintiffs' favor, a reasonable jury could find that the OSHA regulations were violated and that Mr. Owens' injuries are causally related thereto. Therefore, Process' motion for partial summary judgment will be denied.

### B. *DuPont's Motion*

In support of its motion DuPont makes, essentially, two arguments. First, that it

"did not retain active control over the work site, and did not voluntarily or by agreement take responsibility for safety in the work area," and consequently "did not incur a duty to ... [implement] OSHA regulations at the work site." (D.I. 50 at 4–8.) Second, that even if it did "the pertinent regulations were not violated." (*Id.* at 8–9.)

### 1. DuPont's Control of the Work Site

■ While the issue has not been passed on by the Delaware Supreme Court, the Superior Court has consistently held that although not a direct employer or controller of workers, a landowner may nonetheless be responsible for implementing OSHA regulations where the landowner controls the work area or voluntarily or by agreement undertakes responsibility for implementation of the regulations. *Rabar,* 415 A.2d at 504–05; *see also Troise v. Herman Miller, Inc.,* C.A. No. 85C–FE–132, 1989 WL 64119, LEXIS op. at 5 (Del. Super. May 18, 1989); *Farrall v. A.C. & S. Co.,* C.A. No. 85C–FE–10, 1989 WL 25881, LEXIS op. at 2 (Del.Super. March 6, 1989); *Bowles v. White Oak, Inc.,* C.A. No. 86C–AP–107, 1988 WL 97901, LEXIS op. at 9 (Del.Super. Sept. 15, 1988); *Brozozowski v. Ingersoll–Rand Co.,* C.A. No. 83C–JL–110, LEXIS op. at 3 (Del.Super. Oct. 24, 1985); *O'Connor v. Diamond State Tel. Co.,* 503 A.2d 661, 664 (Del.Super.1985); *Johnson v. City of Wilmington,* C.A. No. 82C–MR–67, LEXIS op. at 2 (Del.Super. June 6, 1982).

■ On this point Plaintiffs proffer the following evidence. That pursuant to the contract between DuPont and Process, Process agreed to "comply with DuPont's safety practices at the Stine Laboratory" and that "[f]ailure to do so may result in immediate suspension and/or termination of work." (D.I. 53A at A–1.) Process was required to comply with a DuPont safety manual "Safety Information and Instructions for Contractors." (*Id.* at A–4.) Process could not subcontract work without DuPont's written consent. (*Id.* at A–5.)

Plaintiffs also proffer deposition testimony that DuPont designated one of its employees, Gene Huntoon, as "contract administrator." (Huntoon Dep. at 5; *see also*

D.I. 53A at A–6.) Huntoon and his assistant, William Norris, were responsible for issuing daily work permits to Process employees. (Huntoon Dep. at 15–17; *see also* D.I. 53A at A–7 to A–9.) These permits were only good for one day because DuPont "only wanted to cover one day because we were working with live steam." (Huntoon Dep. at 16; *see also* D.I. 53A at A–8.) Huntoon would include cautionary words on the permits because:

If you go through the phase of a job, you're talking about power equipment, you're talking about safety equipment you'd use while you work, you're talking about people in the area, barricading, if it so requires, their own people just working around their own equipment, even if DuPont wouldn't be involved directly there. General things that would help them stay in a safe manner.

(Huntoon Dep. at 17; *see also* D.I. 53A at A–9.)

DuPont also made periodic inspections of the job site. (Huntoon Dep. at 28–29; D.I. 53A at A–10 to A–11.) In fact, Plaintiffs proffer the deposition testimony of Mr. Owens that on the day of the incident in question, DuPont stopped work on the excavation, requiring that shoring be installed in the pit. (Owens Dep. at 26–27; D.I. 53A at A–12 to A–13.) After shoring was installed, DuPont gave permission to proceed. (Owens Dep. at 28; D.I. 53A at A–14.) Plaintiffs also proffer the deposition testimony of John Hoffman, a construction supervisor for Process, that Process was "pretty much working under the direction of DuPont when they performed the excavation." (Hoffman Dep. at 7; D.I. 53A at A–15.)

Viewing all evidence and inferences in Plaintiffs' favor, a reasonable jury could find that DuPont exercised control over the work site or voluntarily undertook to implement the OSHA regulations.

### 2. Violation of the Regulations

■ The OSHA regulations which are the subject of DuPont's motion are the following: § 1926.651(f), (k), and (p), *see supra;* § 1926.652(b), (c), and (j), *see supra;* and § 1926.650(i) which provides:

Daily inspections of excavations shall be made by a competent person. If evidence of possible cave-ins or slides is apparent, all work in the excavation shall cease until the necessary precautions have been taken to safeguard the employees.

On this point, Plaintiffs proffer the deposition testimony of Mr. Huntoon that while it was his responsibility to oversee the project, he received no training related to the proper method of sheeting or shoring, and neither he nor his assistant Mr. Norris was familiar with what would comply with OSHA standards. (Huntoon Dep. at 25; D.I. 53A at A–34.) Furthermore, DuPont admits that it inspected the work site. (D.I. 3 at ¶ 13; *see also* D.I. 50 at 9.) It also states that it is in the chemical business and "is not a construction company." (*Id.*) Viewing all evidence and inferences in Plaintiffs' favor, a reasonable jury could find that the OSHA regulations in question were violated.

Therefore, there are genuine issues of fact for trial, and DuPont's motion for partial summary judgment will be denied.

An appropriate order will be entered in accordance with the foregoing.