Thomas CARROLL and Grace Carroll, Plaintiffs,

v.

GETTY OIL COMPANY, a Delaware Corporation, Getty Refining and Marketing Company, a Delaware Corporation, and Getty Oil Company (Eastern Operation), Inc., a Delaware Corporation, Defendants.

Civ. A. No. 79–268.

United States District Court, D. Delaware.

Aug. 27, 1980.

James W. Semple of Flanzer & Isaacs, Wilmington, Del., for plaintiffs.

William F. Taylor and Barry M. Willoughby of Young, Conaway, Stargatt & Taylor, Wilmington, Del., for defendants.

## MEMORANDUM OPINION

LATCHUM, Chief Judge.

This action, based on diversity of citizenship,[1] was brought by plaintiffs, Thomas Carroll and his wife Grace, against Getty Oil Company, Getty Marketing and Refining Company, and Getty Oil Company (Eastern Operations), Inc. The plaintiffs seek compensatory and punitive damages for personal injuries suffered by Mr. Carroll while he was operating a Milton Form Rolling Machine ("MFRM") owned by Getty Marketing and Refining Company ("Getty") which was located at Getty's refinery at Delaware City, Delaware. Plaintiffs have moved for partial summary judgment on issues relating to negligence *per se*, proximate cause, contributory negligence, assumption of risk, and punitive damages.

While many of the facts are contested, the Court has found the following facts to be essentially undisputed: Plaintiff Thomas Carroll, a trained boilermaker, was at all times pertinent to this action an employee of Catalytic, Inc. ("Catalytic").[2] Catalytic, a separate and distinct corporate entity from Getty was under contract with Getty to perform certain types of maintenance work for the latter at its Delaware City refinery.[3] On the night of September 24, 1977, Mr. Carroll was working in the tool-

---

1. The plaintiffs are Maryland citizens and the defendants are Delaware corporations having their principal places of business in states other than Maryland; jurisdiction exists by virtue of 28 U.S.C. § 1332. Getty Marketing and Refining Company is a wholly owned subsidiary of Getty Oil Company. Getty Oil Company (East-ern Operations), Inc., is now a defunct corporation.

2. Docket Item ("D.I.") 18, pp. 3–4.

3. D.I. 14, ¶¶ 22 & 24; D.I. 38, p. 4.

room of the Maintenance and Construction Building at the refinery.[4] He and another Catalytic employee, Jim Hall, were rolling stainless steel mesh on the MFRM.[5] Although both men were using the machine, each worked independently, performing all the necessary tasks alone.[6] At the time Mr. Carroll was wearing welding gloves in order to protect his hands from being cut by the sharp edges of the wire mesh he was handling.[7] As Mr. Carroll was feeding a piece of wire mesh into the MFRM, the machine caught the edge of his glove and his left hand was pulled into the machine. Noticing his predicament, but unable to reach its controls with his right hand, Mr. Carroll vainly attempted to pull his hand out of the glove and away from the machine, ripping the glove in the process. By the time Mr. Hall realized what was happening and turned off the MFRM, Mr. Carroll had already managed to tear his hand out of the machine, leaving part of his hand and the glove behind.[8] As a result of his accident, Mr. Carroll's left middle and index fingers were partially amputated and his left ring finger was damaged.[9]

On June 6, 1979, plaintiffs brought this negligence action seeking compensatory and punitive damages for the injuries suffered by Mr. Carroll in this incident.

The second amended complaint alleges that Getty was negligent in five respects and that such negligence proximately caused Mr. Carroll's injuries. Specifically, plaintiffs allege that Getty was negligent in that it:

(a) supplied to plaintiff a piece of machinery which [it] knew or should have known was, or was likely to be, dangerous for the use to which it was supplied;

(b) failed to exercise reasonable care to make the machinery safe for the use to which it was supplied;

(c) failed to exercise reasonable care to discover the machinery's dangerous condition and to inform plaintiff thereof;

(d) failed to warn the plaintiff of the dangerous condition of the supplied machinery;

(e) failed to comply with the then existing and applicable federal and state safety regulations, including but not limited to, 29 C.F.R. § 1910.212.[10]

Getty has denied these allegations and has raised the affirmative defenses of contributory negligence and assumption of risk.[11] Plaintiffs have moved for partial summary judgment requesting that an order be entered declaring that:

1. [Getty's] lack of compliance with existing and applicable federal and state safety standards constitutes negligence as a matter of law;

2. [Getty] may not avail [itself] of the defenses of contributory negligence and assumption of risk;

3. [Getty's] failure to comply with the existing and applicable federal and state safety standards was a proximate cause of plaintiff's injuries;

4. [Getty's] conduct in consciously disregarding the above–referenced safety standards justifies the jury being instructed on the law of punitive damages.[12]

Plaintiffs in moving for summary judgment face an extremely heavy burden in this Circuit. Consequently, this Court's consideration of their motion is governed by the following stringent standards set forth in *United States ex rel. Jones v. Rundle*, 453 F.2d 147, 150 (C.A.3, 1971):

Summary judgment is proper only when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

4. D.I. 38, pp. 8–9.

5. D.I. 18, pp. 7–8.

6. *Id.*

7. D.I. 18, pp. 12–13; D.I. 38, p. 45.

8. D.I. 18, pp. 12–14.

9. D.I. 18, pp. 17–18.

10. D.I. 45.

11. D.I. 7.

12. D.I. 47.

law." Fed.R.Civ.P. Rule 56(c). "Any doubt as to the existence of a genuine issue of fact is to be resolved against the moving party. . . . Documents filed in support of a motion for summary judgment are to be used to determine whether issues of fact exist and *not* to decide the fact issues themselves." *Krieger v. Ownership Corp.*, 270 F.2d 265, 270 (3d Cir. 1959); accord, *Bowman Steel Corp. v. Lumbermens Mutual Casualty Co.*, 364 F.2d 246 (3d Cir. 1966); *Janek v. Celebrezze*, 336 F.2d 828 (3d Cir. 1964). The burden of demonstrating the justification for a motion for summary judgment lies with the movant. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 153–161, 90 S.Ct. 1598, 1606–1610, 26 L.Ed.2d 142 (1969). "Summary judgment may not be granted where there is the slightest doubt as to the facts." *Tomalewski v. State Farm Ins. Co.*, 494 F.2d 882, 884 (C.A.3, 1974). Moreover, summary judgment is even unwarranted in cases where the basic underlying facts are undisputed if rational opposing inferences as to the ultimate facts could be drawn from those undisputed facts. *Carpenter International, Inc. v. Kaiser Jamaica Corp.*, 369 F.Supp. 1138 (D.Del.1974). On the basis of the foregoing principles, the Court has concluded that plaintiffs have failed to meet their burden and that summary judgment is not warranted on any issue whatsoever.

1. Negligence *per se.*

Plaintiffs first contend that they are entitled to summary judgment declaring that Getty was negligent *per se* because it failed to comply with certain regulations ("OSHA regulations") adopted by the Federal Occupational Safety and Health Administration ("OSHA"), which regulations have also been adopted by reference as Delaware State Regulations by the Delaware Department of Labor pursuant to 19 *Del.C.* § 106(a) (1974).[13] Specifically, plaintiffs contend that Getty violated 29 C.F.R. § 1910.212 because Getty failed to equip the MFRM with certain safety devices allegedly mandated by that regulation, namely, "a brake–type foot motor or deadman's switch." Getty contends that 29 U.S.C. § 653(b)(4) precludes the use of any alleged violation of OSHA standards for the purpose of establishing negligence *per se.* See, *Otto v. Specialties, Inc.*, 386 F.Supp. 1240 (N.D.Miss.1974); see also, *Jeter v. St. Regis Paper Co.*, 507 F.2d 973 (C.A.5, 1975); *Skidmore v. Travelers Insurance Co.*, 356 F.Supp. 670 (E.D.La.1973), aff'd 483 F.2d 67 (C.A.5, 1973). Getty further contends that summary judgment is unwarranted on this issue in any case because there is a dispute of fact as to whether Getty was responsible for assuring that the MFRM conformed to OSHA regulations.

In a diversity case, this Court is clearly required to apply Delaware law. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Under Delaware law, conduct in violation of a statute, ordinance, rule, or regulation enacted for the safety of others and having the force of law constitutes negligence *per se.* *Sammons v. Ridgeway*, 293 A.2d 547 (Del. Sup.Ct.1972); *Rabar v. E. I. DuPont de Nemours & Co., Inc.*, 415 A.2d 499 (Del.Super.Ct.1980); *Schwartzman v. Weiner*, 319 A.2d 48 (Del.Super.Ct.1974); *Nance v. Rees*, 2 Storey 533, 161 A.2d 795 (Del.Super.Ct. 1960); *Wealth v. Renai*, 10 Terry 289, 114 A.2d 809 (Del.Super.Ct.1955); *Hetherton v. Sears, Roebuck & Co.*, 593 F.2d 526 (C.A.3, 1979); *Taylor v. Pa. Railroad Co.*, 246 F.Supp. 604 (D.Del.1965). In order to establish that a defendant has been negligent *per se* a plaintiff must show (1) that the statute, ordinance, rule or regulation invoked by plaintiff embodies a "standard of conduct designed to protect from injury or harm a class of persons of which the plaintiff is a member," (2) that the defendant is a person required to conform to the minimum standards so imposed, and (3) that the defendant has in fact deviated from those standards. *Rabar v. E. I. DuPont de Nemours & Co., Inc.*, supra at 503; *Schwartzman v. Weiner*, supra at 54–55.

13. Since the federal and state regulations are identical, the Court shall simply refer to the state regulations as "OSHA regulations" in this opinion.

■ It is clear in the present case that the regulations invoked by the plaintiffs "embody a standard of conduct designed to protect from injury or harm a class of persons of which the plaintiff is a member." The State regulations and the statute pursuant to which they were adopted were promulgated for the express purposes of "prevent[ing] accidents or . . . industrial or occupational diseases" and rendering places of employment safe. 19 *Del.C.* § 106(a) (1974). Indeed, in *Rabar v. E. I. DuPont de Nemours & Co., Inc., supra,* the Delaware Superior Court held that where one who is responsible for implementing OSHA safety regulations, which have been adopted by the Delaware Secretary of Labor as Delaware regulations, violates those regulations, the violator is negligent *per se.* Getty nevertheless contends that 29 U.S.C. § 653(b)(4) [14] expressly forbids the use of any alleged violation of OSHA standards for the purpose of establishing negligence *per se.* The *Rabar* court addressed and rejected this contention on the ground that because the Delaware statute under which the OSHA regulations were adopted as state regulations contains no counterpart to 29 U.S.C. § 653(b)(4), that statutory provision could have no effect upon the Delaware statute and the regulations adopted thereunder. Negligence *per se* could then be founded on violations of the Delaware regulations alone. This Court finds the reasoning of the *Rabar* case persuasive and, without expressing any opinion on the correctness of those cases holding that violations of federal OSHA regulations cannot be deemed negligence *per se,* holds that a violation of an OSHA safety regulation which has been adopted by reference as a Delaware regulation pursuant to 19 *Del.C.* § 106(a) (1974) will constitute negligence *per se* under Delaware law.

■ However, the Court cannot grant summary judgment on the issue of Getty's negligence (1) because it finds that there is a dispute of fact as to whether Getty was a party required by law to assure that the MFRM conformed with the minimum standards set forth in 29 C.F.R. § 1910.212 and (2) because it finds that, even assuming that Getty was required to assure that the MFRM conformed with OSHA standards, there are insufficient facts in the record to establish that the MFRM in fact deviated from those minimum standards.

First, plaintiffs have failed to adduce sufficient evidence to allow the Court to conclude that the MFRM did not conform with OSHA standards. 29 C.F.R. § 1910.212, which mandates general safety standards applicable to all machines,[15] requires that machines, including the MFRM, be equipped with certain safety features. In particular, that regulation provides:

· (a) *Machine guarding*—(1) *Types of guarding.* One or more methods of machine guarding shall be provided to protect the operator and other employees in the machine area from hazards such as those created by point of operation, ingoing nip points, rotating parts, flying chips and sparks. Examples of guarding methods are—barrier guards, two-hand tripping devices, electronic safety devices, etc.

\* \* \* \* \* \*

(3) *Point of operation guarding.* (*i*) Point of operation is the area on a machine where work is actually performed upon the material being processed.

14. 29 U.S.C. § 653(b)(4) provides:

Nothing in this Act . . . shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment.

15. 29 C.F.R. Subpart O, wherein 29 C.F.R. § 1910.212 appears, also contains more specific regulations setting safety standards for specific classes of machines. None of the other specific regulations would apply the MFRM on their face. The Court has been unable to find and has not been cited to any other specific regulation which would set specific safety standards for the MFRM or a class of machinery which would include the MFRM. Although the plaintiffs have cited the Court to 29 C.F.R. § 1910.-211 and § 1910.217 (D.I. 48, p. 11), neither of those regulations are applicable to the MFRM.

(*ii*) The point of operation of machines whose operation exposes an employee to injury, shall be guarded. The guarding device shall be in conformity with any appropriate standards therefor, or, in the absence of applicable specific standards, shall be so designed and constructed as to prevent the operator from having any part of his body in the danger zone during the operating cycle.

\*　　\*　　\*　　\*　　\*　　\*

(*iv*) The following are some of the machines which usually require point of operation guarding:

\*　　\*　　\*　　\*　　\*　　\*

(e) Milling machines.

\*　　\*　　\*　　\*　　\*　　\*

(i) Forming rolls and calenders

Thus, the MFRM would not conform with 29 C.F.R. § 1910.212 if it had no guarding device whatsoever for any hazard enumerated in § 1910.212(a) or if its point of operation, the area where work is performed, lacked a guarding device. However, if the hazards enumerated and the point of operation were guarded by at least one device, the MFRM would comply with the regulation. In the present case, plaintiffs have established that the point of operation of the MFRM, where Mr. Carroll was injured, lacked a guard that would physically prevent operators from coming into bodily contact with the rolls of the MFRM [16] and that it was not equipped with a deadman's brake, which would have been an appropriate safety device for the hazards associated with the MFRM's point of operation.[17] However, there is no evidence in the present record which indicates that the MFRM's point of operation had no guarding device whatsoever. Therefore, the Court, in ruling on a summary judgment motion, cannot say that any OSHA regulations were violated.

Even if the record affirmatively showed that the MFRM did not conform with OSHA regulations, the Court could not grant summary judgment on the issue of negligence *per se* because there is a dispute of fact regarding the question of whether Getty was a party who was responsible for assuring that the MFRM conformed with OSHA regulations. The Delaware Superior Court in *Rabar v. E. I. DuPont de Nemours & Co., supra,* directly addressed the question of who is responsible for implementing OSHA safety regulations adopted by the Delaware Secretary of Labor. In that case the Court held that all employers whose employees work in a given work area and all those who "jointly control a definable work area" are jointly responsible for the implementation of OSHA regulations in that area. 415 A.2d at 503–505. Given the test articulated by the Delaware court, Getty would be responsible for assuring that the MFRM conformed with 29 C.F.R. § 1910.212 if (1) Getty were Mr. Carroll's employer, (2) if Getty had employees who used the work area, *viz.,* the toolroom of the Maintenance and Construction Building, or (3) Getty exercised control over the working or safety conditions in the toolroom. While it is undisputed that Getty was not Mr. Carroll's employer, there are disputed issues of fact regarding the question of whether Getty controlled the working conditions within the toolroom and there is not sufficient credible evidence showing that Getty employees used the toolroom to warrant summary judgment.

First, there are disputed issues of fact relating to the question of control of the work area. Although Getty owned the toolroom,[18] owned the equipment located there, including the MFRM,[19] had ultimate supervisory authority over maintenance and construction work as well as safety at the

---

**16.** D.I. 38, pp. 46–49.

**17.** D.I. 38, pp. 50–58. There is also confused testimony which may indicate that the MFRM may have originally been equipped with a two-hand tripping device which may have been altered. (D.I. 50, pp. 18–34).

**18.** D.I. 38, p. 9.

**19.** D.I. 38, p. 59; D.I. 36, ⸢ 1.

refinery,[20] and had the ultimate decision-making power over what equipment could be purchased for use in the toolroom,[21] there is also a great deal of evidence from which a jury could conclude that Catalytic, Carroll's employer, had *complete* control over the nature of the equipment and the safety program within the work area. There is evidence from which one could conclude that Catalytic employees determined what equipment would be used in the toolroom and Getty's control was limited simply to budgetary oversight.[22] Similarly, Catalytic was in complete control of the maintenance of the toolroom and its equipment[23] and of its own safety program.[24]

Second, the only testimony in the record relating to the question of whether Getty employees used the toolroom is highly equivocal and clearly insufficient evidence upon which to base a summary judgment. That testimony is as follows:

Q So both Getty and Catalytic employees use the equipment in that room. Is that correct?

A Well, it's possible, yes. We do have other maintenance shops, as well. But, I mean, sometime or other they both use—it's mostly used by Catalytic.

Q But it is also available to Getty employees. Is that correct?

A Yes.[25]

Thus, the Court cannot conclude, for purposes of a summary judgment motion, that Getty was a party responsible for maintaining the MFRM in conformity with OSHA standards. Consequently, the Court concludes that plaintiffs' motion for summary judgment on the issue of negligence *per se* must be denied.

2. Proximate Cause.

■ Plaintiffs also seek a summary judgment on the issue of proximate causation, contending that Getty's negligence *per se* in failing to comply with OSHA regulations proximately caused Mr. Carroll's injuries. Even assuming the Court could find Getty negligent *per se*, it could not grant summary judgment on the issue of proximate cause.

By assuming that Getty was negligent *per se*, the Court is assuming that the point of operation of the MFRM was not guarded by any of the safety devices prescribed by 29 C.F.R. § 1910.212. In order to prove that this negligence proximately caused Mr. Carroll's injuries, plaintiffs must (1) adduce evidence showing which of the many guarding devices suggested by 29 C.F.R. § 1910.-212 were appropriate for the hazards associated with the MFRM's point of operation ("appropriate guarding devices"), and (2) adduce evidence showing that all of those appropriate guarding devices would have prevented Mr. Carroll's injuries. If the MFRM could have been equipped with an appropriate guarding device that might not have prevented the particular injury suffered by Mr. Carroll, it would be impossible to find that Mr. Carroll's injuries would not have occurred "but for" Getty's failure to bring the MFRM into conformity with 29 C.F.R. § 1910.212. Plaintiffs have not adduced such evidence. While they have established the undisputed fact that a deadman's brake would have been an appropriate guarding device for the hazards associated with the MFRM's point of operation,[26] they have not established that it would have been the *only* appropriate guarding device. Indeed, there is confused testimony that the MFRM may have been equipped originally with a two–hand tripping device, one of the guarding methods prescribed by § 1910.212(a).[27] This testimony raises the inference that a two–hand tripping device may be an appropriate guarding device for the MFRM's point of operation. However,

---

**20.** D.I. 38, pp. 66, 71–72.

**21.** D.I. 38, pp. 11, 59.

**22.** D.I. 38, pp. 10–11, 16–17, 36–37, 77–80.

**23.** D.I. 38, p. 36.

**24.** D.I. 14, ¶¶ 20, 22; D.I. 38, p. 77.

**25.** D.I. 38, p. 10.

**26.** D.I. 38, pp. 50–58.

**27.** D.I. 50, pp. 18–34.

there is no evidence in this record demonstrating that a two–hand tripping device or any other possibly appropriate guarding devices (if there are any other such devices) would have prevented Mr. Carroll's injuries. Therefore, the Court cannot grant summary judgment on the issue of proximate cause.

Secondly, even if the Court were to assume that a deadman's brake were the *only* appropriate guarding device for the MFRM's point of operation, summary judgment on the issue of proximate causation would still have to be denied. There is evidence in the record which could lead a jury to conclude that even a deadman's brake would not have prevented Mr. Carroll's injuries.[28]

3. Contributory Negligence and Assumption of Risk.

Plaintiffs also request summary judgment on the issues of contributory negligence and assumption of risk and contend that they are entitled to summary judgment on two grounds. They first contend that the affirmative defenses of contributory negligence and assumption of risk are not available in cases where negligence *per se* is founded upon laws or regulations enacted for the purpose of protecting workers against their own inability to protect themselves. Next, they argue that even if the defenses were available, plaintiffs would be entitled to summary judgment because the undisputed facts show that Mr. Carroll was not contributorily negligent and did not assume the risk of injury when operating the MFRM. The Court concludes that summary judgment is unwarranted on either basis.

■ First, although the Delaware Supreme Court has not ruled on the matter, the Court concludes that the affirmative defenses of contributory negligence and assumption of risk are available to defendants in cases such as the present one. It is well established in Delaware law that a plaintiff's contributory fault or assumption of the risk are defenses to an action based upon negligence. *Jones v. Pennsylvania*

*Railroad Co.*, 11 Terry 57, 123 A.2d 111 (Del.Super.Ct.1956); *Frelick v. Homeopathic Hospital Association of Delaware*, 1 Storey 568, 150 A.2d 17 (Del.Super.Ct.1959). On several occasions the Delaware Supreme Court has dealt with questions relating to contributory negligence and assumption of risk in cases involving negligence *per se* without even questioning the propriety of applying those defenses. *Getty Oil Co. v. Heim*, 372 A.2d 529 (Del.Sup.Ct.1977); *Sammons v. Ridgeway*, 293 A.2d 547 (Del.Sup. Ct.1972). Indeed, as a general rule both defenses are normally available in cases founded upon negligence *per se*. Prosser, *Law of Torts*, §§ 65 and 68 (Fourth Edition, 1971). A number of courts, however, applying the law of states other than Delaware have held that neither defense is available in cases where the defendant's negligence is founded upon the violation of a statute designed to protect a certain class of people from dangers against which they cannot protect themselves. For example, laws designed for the protection of workmen have been found to fall within this class. *Osborne v. Salvation Army*, 107 F.2d 929 (C.A.2, 1939). *See*, Prosser, *Id.* But, in *Rabar v. E. I. DuPont de Nemours & Co., Inc.*, *supra*, the Delaware Superior Court declined to adopt the rule of those cases and held that the defense of contributory negligence was available in cases where a non–employer defendant's negligence was founded upon that defendant's violation of OSHA regulations.

This Court is convinced that the Delaware Supreme Court would follow the rule of *Rabar*. Indeed, in another context, the Delaware Supreme Court has refused to abrogate or otherwise alter the contributory negligence rule without some action by the legislature. *McGraw v. Corrin*, 303 A.2d 641 (Del.Sup.Ct.1973). The Delaware Supreme Court is particularly loath to change a rule of tort law where the legislature has actually acted to change the law in a closely related area. *Cline v. Prowler Industries of Maryland, Inc.*, 418 A.2d 968 (Del.Sup.Ct.1980). In 19 *Del.C.* § 2314 the

---

**28.** D.I. 38, pp. 50–52.

Delaware Legislature abrogated the common law defenses of assumption of risk, contributory negligence and the fellow employee doctrine in actions brought by employees seeking compensation from their employers for injuries sustained in accidents arising out of and in the course of employment. The abrogation of those defenses, however, is limited to actions brought by employees against their employers. Those defenses have been held to be available in actions brought against third party tortfeasors. *Dickinson v. Eastern Railroad Builders*, 378 A.2d 650, 656 (Del. Super.Ct.1977). Thus, this Court must conclude that the legislature intended that those defenses remain available in cases such as the present one and that the Delaware Supreme Court would so hold.

■ The Court also finds that there are disputed issues of fact relating both to contributory negligence and assumption of risk. In the first place, there is a dispute of fact as to whether Mr. Carroll was contributorily negligent when he operated the MFRM alone. There is evidence indicating that Mr. Carroll knew, or should have known, that the proper and safe way to operate the machine was to have one employee manning the controls while a second fed the material into the machine.[29] There is also evidence indicating otherwise.[30] Secondly, there is evidence indicating that Mr. Carroll was contributorily negligent in wearing welding gloves while working with the MFRM[31] and evidence indicating otherwise.[32] Finally, there is evidence that the danger of the MFRM was obvious[33] from which a jury might conclude that Mr. Carroll was aware of the risk and assumed it. Similarly, the fact that the machine had been used since 1956, often improperly,[34] without a single accident occurring[35] could lead a jury to conclude that the risk was not obvious and Mr. Carroll did not assume the risk by using it. Consequently, the Court must deny plaintiffs' motion for summary judgment on the issues of contributory negligence and assumption of risk.

4. Punitive Damages.

■ The Court cannot, at the present time, hold that the issue of punitive damages should be submitted to the jury. In Delaware, punitive damages are awarded not as compensation but as punishment to the wrongdoer for wilful or wanton misconduct. *Riegel v. Aastad*, 272 A.2d 715 (Del. Sup.Ct.1970); *Cannon v. Fidelity and Casualty Company of New York*, 484 F.Supp. 1375 (D.Del.1980); *Stephens v. Melson*, 426 F.Supp. 1022 (D.Del.1977). Wilful or wanton conduct is nothing short of a callous and conscious indifference to whether the plaintiff is injured, characterized by an "I-don't-care attitude." *McHugh v. Brown*, 11 Terry 154, 125 A.2d 583, 586 (Del.Sup.Ct. 1956); *Foster v. Shropshire*, 375 A.2d 458, 461 (Del.Sup.Ct.1977). The present evidence, with no more, does not indicate such an attitude on the part of Getty. Indeed, the present record tends to show a high concern by Getty for safety within the plant and a fairly extensive safety program.[36] The evidence also shows that Getty made a good faith attempt to comply with OSHA regulations but, in some cases, may have been unable to comply because the regulations were so broad and vague that it was impossible for Getty to determine its exact responsibilities.[37] But even if the record did indicate an attitude on Getty's part warranting an instruction on punitive damages, the Court would hesitate at this time to declare its intention to give such an instruction. The proper time for that determination is after the evidence has been submitted at trial.

29. D.I. 38, pp. 44, 54, 100–101, 106, 115, 122.

30. D.I. 38, pp. 42–44; D.I. 18, pp. 6–7, 14.

31. D.I. 38, p. 44.

32. D.I. 38, pp. 45, 118; D.I. 18, p. 16.

33. D.I. 38, pp. 111, 123.

34. D.I. 18, p. 7.

35. D.I. 38, pp. 95, 106.

36. D.I. 38, pp. 70–71, 76–80.

37. D.I. 36, ⸢ 22; D.I. 40, ⸢ 1.

418

Consequently, for the reasons stated above, the Court concludes that plaintiffs' motion for partial summary judgment must be denied in its entirety. An Order will be entered consistent with this Memorandum Opinion.