Moriah M. Poole HARDEN, a minor, by her next friend, Phyllis R. Harden, Phyllis R. Harden, as Personal Representative of the Estate of Joshua M. Poole, Margaret L. Poole, Individually and as Personal Representative of the Estate of Michael W. Poole, and Glenna L. Rufenacht, Personal Representative of the Estate of Shelby R. Poole, Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY, a foreign corporation, Defendant,

and

James M. DALRYMPLE, Jr., Defendant/Third–Party Plaintiff,

v.

Peter B. JONES, Esquire, Administrator of the Estate of Winnita M. Sennett, deceased, Third–Party Defendant.

Civ. A. No. 93–513–SLR.

United States District Court, D. Delaware.

May 2, 1995.

William D. Fletcher, Jr., and Larry Fifer, of Schmittinger & Rodriguez, Dover, DE, Peter Ayers Wimbrow, III, Ocean City, MD, E. Scott Collins, Ocean City, MD, for plaintiffs Moriah M. Poole Harden, Phyllis R. Harden, Estate of Joshua M. Poole, Glenna L. Rufenacht, and the Estate of Shelby Poole.

Gary F. Dalton, and Rebecca D. Batson, of Prickett, Jones, Elliott, Kristol & Schnee, Dover, DE, for plaintiffs Margaret Poole and the Estate of Michael Wayne Poole.

Dennis D. Ferri, Wilmington, DE, for defendant Allstate Corp.

Carol P. Braverman, and Michael J. Rich, of Twilley, Street, Rich, Braverman & Hindman, Dover, DE, Richard Galperin, and Joseph R. Slights, of Morris, James, Hitchens & Williams, Wilmington, DE, for defendant/third party plaintiff James M. Dalrymple.

Richard F. Stokes, and Brian D. Shirey, of Tunnell & Raysor, Georgetown, DE, for third party defendant Peter B. Jones.

## OPINION

SUE L. ROBINSON, District Judge.

### I. INTRODUCTION

Plaintiffs [1] filed this cause of action against defendants Allstate Insurance Company ("Allstate") and James C. Dalrymple ("Dalrymple") in November of 1993. (D.I. 1) In December of 1993 Dalrymple filed a third party complaint against Peter C. Jones, Esq., the administrator of the estate of Winnita M. Sennett (the "Estate"). (D.I. 6) Presently before the court are plaintiffs' and defendant Dalrymple's cross-motions for summary judgment (D.I. 101, 98); plaintiffs' and defendant Allstate's cross-motions for summary judgment (D.I. 92, 101); and the Estate's motion for summary judgment. (D.I. 95)

### II. BACKGROUND

This litigation concerns events surrounding a tragic automobile accident occurring between Winnita M. Sennett ("Sennett") and Michael W. Poole ("Poole") on February 21, 1992 on Route 113 proximate to Milford, Delaware. In said automobile accident Poole was driving his automobile northbound on Route 113 with his wife, son, and daughter as passengers and Sennett was driving alone southbound. Evidence of record indicates that Sennett's automobile at some point crossed the center line of the street, driving others off the road, and eventually collided head-on into Poole's automobile. Poole's six-year-old daughter, Moriah M. Poole Harden ("Harden") is the sole survivor of the accident. (D.I. 100 at A102–107)

Sennett's vehicle was insured by Colonial Insurance Company and possessed a $30,000 limit on its coverage. Said amount was paid to the victims of this accident. (D.I. 1 at ¶ 17) Prior to the accident, the Pooles purchased underinsured coverage from Allstate in the amount of $100,000 per person or $300,000 per occurrence. (D.I. 103 at A55)

Plaintiffs' allegations against Dalrymple concern his role as Sennett's physician and, specifically, his treatment of her epileptic condition. Dalrymple, specializing in general neurology, first began caring for Sennett in 1987. (D.I. 99 at 7; 120 at 3) In March of 1988, Sennett ceased treatment with Dalrymple. Contact did not resume between the two until February 1989 when Dalrymple consulted with Sennett while she was in the hospital recovering from an automobile accident. During this consultation, Dalrymple learned that the 1989 accident was apparently caused by an epileptic seizure occurring immediately prior to her collision. (D.I. 99 at 7) In July of 1991, Sennett returned to Dalrymple's care and they continued this relationship until her death. (D.I. 100 at 66–75)

Section 1763, Title 24, of the Delaware Code provides as follows:

> Every physician attending or treating epilepsy shall report within 1 week to the Division of Motor Vehicles the names, ages and addresses of all persons treated as cases of epilepsy.

> The reports shall be for the information of the Division of Motor Vehicles in enforcing the Motor Vehicle Law. Said reports shall be kept confidential and used solely for the purpose of determining the eligibility of any person to operate a motor vehicle on the highways of this State.

> A physician failing to make such a report shall be fined not less than $5 nor more than $50 and costs for each such report he fails to make.

Dalrymple, although aware of § 1763 and that Sennett fell within the category of citizens affected by said statute, did not report her to the Division of Motor Vehicles. He argues that he was "philosophically opposed to the statute because he felt that reporting his patients to the Division of Motor Vehicles constituted a betrayal of his patients' right to privacy, and of the doctor/patient privilege." (D.I. 99 at 8; 120, Ex. 1 at 12) Dalrymple did know that Sennett had a history of automobile accidents during which she apparently lost consciousness. He also opined that her condition was such that she should not be driving. (D.I. 120, Ex. 1, at 13) Dalrymple

---

1. "Plaintiffs" refers to Moriah M. Poole Harden, by her next friend Phyllis R. Harden, Margaret Poole, and the representatives of and estates of Joshua M. Poole, Michael W. Poole, and Shelby R. Poole.

did have Sennett read and sign a form which included recitation of § 1763, as well as 21 Del.C. § 2707, which outlines Delaware's license qualifications. (D.I. 100 at A101) Section 2707 particularly excludes from eligibility for driver's licenses individuals subject to losses of consciousness due to diseases of the central nervous system. Dalrymple did not advise Sennett's husband or children that she should not drive. (*Id.* at A78) Dalrymple testified that he was under the impression both that Sennett knew she should not be driving and that she was, in fact, not driving. (*Id.* at A77)

On November 2, 1993, plaintiffs filed this action. Count III is directed solely at Dalrymple on behalf of Harden for the wrongful deaths of her family and for her own injuries. (D.I. 1 at ¶ 30) Specifically, Harden alleges that Dalrymple was negligent in his failure to conform to the standards of care in the local community by 1) failing to provide reasonable care; 2) failing properly to treat Sennett for her seizures; 3) failing to timely report Sennett to the Division of Motor Vehicles pursuant to § 1763; 4) breaching his affirmative duty to the Pooles to protect them and others on the roads from Sennett; and 5) failing to take appropriate steps to protect plaintiffs from the unreasonable danger of Sennett's operation of the motor vehicle. (*Id.* at ¶ 29) Count IV alleges that Dalrymple was negligent *per se* in his failure to report Sennett pursuant to § 1763. For both these counts Harden seeks general and special damages for herself and for the wrongful death of her parents. She also seeks punitive damages. Counts V–VIII are survival causes of action on behalf of the decedents against both Dalrymple and Allstate. (*Id.* at ¶¶ 33–42)

Dalrymple denied plaintiffs' allegations and filed a third party complaint against the Estate. (D.I. 6) Dalrymple grounds his motion for summary judgment as to Counts III–VII in the argument that he owed no duty to plaintiffs either through § 1763 or the common law. He also moves for summary judgment as to Counts III and IV arguing that punitive damages are not permitted in wrongful death claims, and as to Counts V–VII arguing that hedonic damages are not permitted in "survival" claims. (D.I. 98)

Plaintiffs move for partial summary judgment arguing that Dalrymple's failure to report Sennett was a breach of his duty of care, a violation of both his statutory and common law duties, and negligent *per se.* They also seek summary judgment against Allstate. (D.I. 101) Allstate has filed a cross-motion for summary judgment arguing that the plaintiffs are not eligible for underinsured motorist benefits. (D.I. 92) The Estate moves to dismiss Dalrymple's third party complaint arguing that his claim is barred. (D.I. 95)

This court has jurisdiction pursuant to 28 U.S.C. § 1332, this being a civil action between citizens of different states. Because this is a case in diversity, unless otherwise noted, this court shall apply Delaware law. *Carroll v. Getty Oil Co.,* 498 F.Supp. 409, 412 (D.Del.1980), *overruling on other grounds recog. by Figgs v. Bellevue Holding Co.,* 652 A.2d 1084 (Del.Super.Ct.1994).

## III. DISCUSSION

### A. Plaintiffs' and Dalrymple's Cross-Motions for Summary Judgment

#### 1. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that a party is entitled to a summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is "material" if it might affect the outcome of the litigation under the applicable law. *Id.* A party seeking a summary judgment always bears the initial responsibility of informing the court of the basis for the motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, which said party believes demonstrate the absence of a genuine issue of material fact. *Id.*

█ Where the nonmoving party opposing summary judgment has the burden of proof at trial on the issues for which summary judgment is sought, that party must then make a showing sufficient to establish the existence of an element essential to its case. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Moreover, the mere existence of some evidence in support of the nonmoving party will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmoving party on that issue. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510. However, "[a]ny inference to be drawn from facts contained in depositions and exhibits must be viewed in the light most favorable to the non-moving party." *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 637 (3d Cir.1993). "In deciding a motion for summary judgment, the judge's function is not to weigh the evidence and determine the truth of the matter, but rather to determine if there is a genuine issue for trial." *Id.*

## 2. Analysis

█ Actionable negligence is premised upon the existence of a legal duty, a breach of that duty, and injury proximately caused by the breach. *Naidu v. Laird*, 539 A.2d 1064, 1071 (Del.1988). The question as to whether a legal duty exists, i.e., whether " 'such a relationship exists between the parties that the community will impose a legal obligation upon one for the benefit of the other' is an issue for the court ..." and must be determined on a case-by-case basis. *Id.* Plaintiffs allege that Dalrymple owed them both a statutory and common law duty to

report Sennett to the Division of Motor Vehicles and that his failure to do so was a negligent action. Dalrymple acknowledges that the law requires him to report Sennett, but argues that such does not create a duty flowing from him to plaintiffs.

### a. *Per Se* Liability

*Per se* liability is properly imposed only if § 1763 creates a statutory duty owed by Dalrymple to the Pooles. Dalrymple argues that because § 1763 contains no mention of civil liability and because the purpose of the statute is to delegate an obligation of the state to others, namely physicians, *per se* liability is not properly imposed in this case. Plaintiffs argue that the purpose of § 1763 is for the general safety of others and that the statute, therefore, creates a duty to third parties such as the Pooles.

> In order to establish that a defendant has been negligent *per se* a plaintiff must show (1) that the statute ... invoked by plaintiff embodies a "standard of conduct designed to protect from injury or harm a class of persons of which the plaintiff is a member," (2) that the defendant is a person required to conform to the minimum standards so imposed, and (3) that the defendant has in fact deviated from those standards.

*Carroll*, 498 F.Supp. at 412 (citing *Rabar v. duPont de Nemours & Co., Inc*, 415 A.2d 499, 503 (Del.Super.Ct.1980)).

█ "Under Delaware law, conduct in violation of a statute, ordinance, rule, or regulation enacted for the safety of others and having the force of law constitutes negligence *per se.*" *Id.* (*citing in part Sammons v. Ridgeway*, 293 A.2d 547 (Del.Super Ct.1972)); *Schwartzman v. Weiner*, 319 A.2d 48 (Del.Super.Ct.1974); *Nance v. Rees*, 161 A.2d 795, 797 (Del.1960). As noted by Dalrymple, however, the Delaware Supreme Court has adopted § 288(c) of the Restatement of Torts[2] by holding that a city ordi-

---

2. "The court will not adopt as a standard of conduct of a reasonable man the requirements of a legislative enactment ... whose purpose is found exclusively ...

 \* \* \* \* \* \*

 ' (c) to impose upon the actor performance of a service which the state or any subdivision of it undertakes to give the public."

Restatement (Second) of Torts, § 288 (1965).

nance which seeks to delegate to a citizen a duty imposed on it does not prescribe a standard of care for third parties which imposes civil liability. *Burns v. Boudwin*, 282 A.2d 620 (Del.1971) (failure of abutting land owner to obey city ordinance and clear sidewalk of snow does not create civil liability between the public and property owner).

The initial question facing the court, from which potential liability of Dalrymple flows, is whether the statute at issue was enacted for the safety of others, or as a legislative delegation of a duty of the state to certain citizens. The Delaware Superior Court offers limited guidance for a determination of whether a statute's purpose is "for the safety of others," by stating: "So long as the ... [law] embodies a standard of conduct designed to protect from injury or harm a class of persons of which the plaintiff is a member, a violation thereof constitutes negligence *per se.*" *Schwartzman*, 319 A.2d at 54. The court has not found, nor have the parties identified, any relevant legislative history concerning § 1763.

▉ In contrast, the language of the statute unambiguously indicates its purpose by stating that the information gathered as a function of the statute is for the use of "the Division of Motor Vehicles in **enforcing the Motor Vehicle Law.**" 24 Del.C. § 1763 (emphasis added). Indeed, more specifically, the reports gathered are "**solely for the purpose** of determining the eligibility of any person to operate a motor vehicle." *Id.* (emphasis added). The purpose of the statute, according to its plain meaning, is not for the safety of others, but explicitly for aiding the Division of Motor Vehicles in enforcing the Motor Vehicle law, specifically enforcing the licensing procedure process.

Looking beyond the text of the statute, the parties offer numerous analogies to the case at bar in efforts to shed light on the meaning of § 1763. Of the analogies offered (i.e., dramshop cases and infectious disease cases), the court finds most analogous the aforementioned *Burns* case.[3] Critical to the Delaware Supreme Court's holding in *Burns* was the

fact that the duty to clear the sidewalks was originally and unambiguously the government's duty. "It is generally held that a duty is imposed upon the city to use reasonable care to keep its sidewalks safe for passage." *Burns*, 282 A.2d at 622 (emphasis added). Similarly, the duty to issue driver's licenses rests solely with the state. 21 Del.C. § 2713. Specifically, it is the duty of the state to examine an applicant for a license "as to his physical and mental qualifications to operate a motor vehicle in such a manner as to not jeopardize the safety of persons or property and as to whether any facts exist which would bar the issuance of a license...." *Id.* Epilepsy is such a condition and the legislature decreed it illegal to drive with said condition, if the driver meets other prerequisites. 21 Del.C. § 2707(b)(7). Therefore, the legislature, through § 1763, has delegated to physicians treating epileptic patients its solely held duty to examine license applicants for certain physical qualifications. *But see McIntosh v. Milano*, 168 N.J.Super. 466, 403 A.2d 500, n. 13 (N.J.Super.Ct.1979).

Plaintiffs' citation to *Hetherton v. Sears, Roebuck & Co.*, 593 F.2d 526 (3d Cir.1979) is inapposite. In *Hetherton*, a convicted felon illegally purchased a handgun from defendant and several months later shot and injured plaintiff. Plaintiff alleged that defendant negligently sold the gun because it did not require two independent freeholders to identify the purchaser and record such information, pursuant to 24 Del.C. § 904; and it sold the gun to a convicted felon in violation of 11 Del.C. § 1448. The Court of Appeals for the Third Circuit reversed the trial court's grant of summary judgment for defendant and held that § 904 was enacted for the safety of others and that defendant's failure to record the relevant information constituted negligence *per se. Id.* at 530. The case is inapplicable to the one at bar because nowhere does the court discuss, nor does it appear from the relevant statutes, that the state had a duty to record such information about gun purchasers and dele-

---

**3.** It follows, therefore, that the court rejects plaintiffs' characterization of *Burns* as a real property case. (D.I. 120 at 10–11)

gated that duty to defendant. The statute at issue was a regulation of "deadly weapon dealers" and not a delegation of duties. *Id.* Therefore, the court finds no *per se* liability by Dalrymple's failure to follow § 1763.

### b. Common Law Duty

The second predicate on which plaintiffs attempt to establish a duty between defendant and themselves is the common law. Generally a party does not have a duty to control the conduct of a third person. An exception exists when:

> (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

> (b) a special relation exists between the actor and the other which gives to the other a right to protection.

*Naidu,* 539 A.2d at 1072 (*citing Restatement (Second) of Torts* § 315 (1965)). Courts have found that both such relationships exist when a therapist is treating a patient, thus imposing an affirmative duty on a therapist to use reasonable care to protect an intended victim when the patient presents serious danger of violence. *E.g., Tarasoff v. Regents of the Univ. of Cal.,* 551 P.2d 334 (Cal.1976). The Delaware Supreme Court has found such a relationship and, therefore, a duty to third persons, even where no "intended victim" has been identified prior to the violent act. *Naidu,* 539 A.2d 1064. Specifically, the Delaware Supreme Court held that the lower court

> did not err in holding that, based on the special relationship that exists between a psychiatrist and a patient, a psychiatrist owes an affirmative duty to persons other than the patient to exercise reasonable care in the treatment and discharge of psychiatric patients.... Both the special relationship that existed between [the psychiatrist] and [the patient] as well as [the psychiatrist's] broad based obligation to protect the public from potentially violent patients who present unreasonable danger support the imposition of an affirmative duty.

*Id.* at 1072–1073.

Plaintiffs have cited numerous other jurisdictions which have found a duty running from a physician to a third party: *Duvall v. Goldin,* 362 N.W.2d 275 (Ct.App.Mich.1984) (physicians who failed to prescribe medication and instruct epileptic patient not to drive was liable to injured people struck by patient's car during a seizure); *McIntosh,* 403 A.2d at 509 (physician has the duty to warn third persons against possible exposure to contagious and infectious diseases); *DiMarco v. Lynch Homes—Chester Cty., Inc.,* 525 Pa. 558, 583 A.2d 422 (1990) (physician had duty of care to non-patient victim when he failed to inform patient to refrain from sexual activity for six months in order to avoid communicating hepatitis); *Kaiser v. Suburban Transp. System,* 65 Wash.2d 461, 398 P.2d 14 (1965) (failure of physician to warn patient of side effects of medication created a cause of action for injured non-patient third parties); *Gooden v. Tips,* 651 S.W.2d 364 (Tex.App.1983) ("under proper facts, a physician can owe a duty to use reasonable care to protect the driving public where the physician's negligence in diagnosis or treatment of his patient and contributes to plaintiff's injuries."). However, the court in this diversity action, must place itself in the shoes of the Delaware Supreme Court and, therefore, finds the only relevant caselaw applicable to the question at bar is from that court.

As noted, the Delaware Supreme Court found that a psychiatrist violated his duty to the general public when he negligently released a psychiatric patient who later killed others with his automobile. *Naidu,* 539 A.2d at 1072. The *Naidu* court was very explicit in its discussion of the relevant duty:

> This duty arises only when, in accordance with the standards of the profession, a psychiatrist knows or should know that his patient's dangerous propensities present an unreasonable risk of harm to others. *Lipari v. Sears, Roebuck & Co.,* 497 F.Supp. [185] at 193 [ (D.Neb.1980) ]. This duty requires that the psychiatrist or other mental health professional initiate whatever precautions are reasonably necessary to protect potential victims of the patient.

*Id.* at 1073. Therefore, the Delaware Supreme Court has recognized both a duty to a

patient and a "broad-based obligation to protect the public from potentially violent patients who present an unreasonable danger." *Id.*

■ The analysis of the court, however, does not end at the recognition of this broad-based duty. Contrary to plaintiffs' position, and significantly limiting the factual grounds on which plaintiffs may establish their claims, Dalrymple's gross failure to adhere to the requirements of § 1763 cannot be offered to the jury as proof of his breach of his duty. The Supreme Court of Delaware has been equally as explicit about this point as it has about the existence of such a duty. The *Burns* court not only held that statutes such as the one at bar could not be used as a basis for *per se* liability, but that such statutes could not be used as a standard of care whatsoever.

> [A]n ordinance requiring lot owners to keep the sidewalks free from snow and ice and imposing a penalty for the failure to do so imposes **no civil liability** on the lot owner in favor of a third person injured by reason of the violation of the ordinance.... The ordinance does **not purport to establish a general standard of care** to be imposed....

*Burns,* 282 A.2d at 622 (emphasis added). Similarly, the Restatement (Second) of Torts, relied upon by the *Burns* court, also states that "[t]he court will not adopt **as the standard of conduct of a reasonable man** the requirements of a legislative enactment" such as the one at issue in this litigation. Restatement (Second) of Torts § 288 (emphasis added). Consequently, the law is clear that it is inappropriate to utilize a statute such as

the one at issue in this litigation, either for establishing negligence *per se,* or for any indication of negligence.

■ Having ruled that Dalrymple does have a duty to the general public, but that said duty could not be breached by a failure to adhere to the direction of § 1763,[4] the court declines to grant summary judgment in either party's favor. It remains for the jury to determine whether Dalrymple has violated that duty.[5]

## B. Plaintiffs' and Allstate's Cross–Motions for Summary Judgment

■ Allstate moves for summary judgment against plaintiffs. The parties agree that because the insurance contract at issue was written and sold in Maryland, the laws of Maryland apply. *Travelers Indem. Co. v. Lake,* 594 A.2d 38 (Del.1991). (D.I. 93 at 6; 102 at 22)

The Pooles purchased from Allstate an insurance policy for "uninsured motorists."[6] "Underinsured [or uninsured] motorist coverage applies when an insured is involved in an accident with a motorist, who ·may carry extensive liability insurance far in excess of any amounts statutorily required, but whose liability coverage is less than insured's underinsured motorist coverage." *Hoffman v. United Services Automobile Ass'n,* 309 Md. 167, 522 A.2d 1320, 1323 (1987). The Pooles' policy is limited to $100,000 per person or $300,000 per accident. Section 541 of the Maryland Insurance Code, entitled "Required and Optional Coverage," defines "uninsured motor vehicle" as follows:

---

**4.** The court notes in this regard, however, that its decision today should in no way be interpreted as condoning the disregard of a statute passed by the public's representatives simply because a citizen does not believe the law is the most efficacious possible.

**5.** In his opening brief, Dalrymple argues that plaintiffs are not entitled to seek punitive damages on their wrongful death claims or "hedonic damages" on their wrongful death or survival claims. (D.I. 99 at 35–36) Because plaintiffs have stated that they are not seeking punitive damages on their wrongful death claims, the court finds Dalrymple's objection moot. (D.I. 120 at 33) The court also agrees with plaintiffs

that Dalrymple's argument concerning hedonic damages requires more specificity in order to address it properly. (*Id.* at 33–34)

**6.** "Although Section 541(c) refers to 'uninsured motorist' coverage, it is clear that its provisions operate as underinsured motorist coverage to the extent that the person responsible for an accident has less liability coverage than the insured under the uninsured provisions of his own policy." *Aetna Casualty & Surety Co. v. Souras,* 78 Md. App. 71, 552 A.2d 908, 910 (Md.Ct. Spec.App.1989). Hereinafter, the terms "uninsured" and "underinsured" shall be used interchangeably.

[A] motor vehicle whose ownership, maintenance, or use has resulted in the bodily injury or death of an insured, and for which the sum of the limits of liability under all valid and collectible liability insurance policies, bonds, and securities applicable to the bodily injury or death is less than the amount of the coverage provided under this subsection.

\* \* \* \* \* \*

The limit of liability for an insurer providing uninsured motorist coverage under this subsection is the amount of that coverage less the sum of the limits under the liability insurance policies, bonds, and securities applicable to the bodily injury or death of the insured.

Md.Ins.Code Ann. § 541(c).

The issue facing the court is whether Dalrymple's insurance policy falls within the aforementioned definition. Plaintiffs argue, citing to Md.Ins.Code Ann. § 541(c)(2)(i)–(ii), that the statute only concerns itself with the liability of the owner or operator of an uninsured vehicle. Therefore, they assert it is incorrect for Allstate to attempt to include Dalrymple's insurance in calculating whether the Pooles can obtain benefits pursuant to their policy. Furthermore, plaintiffs accuse Allstate of attempting to contract away its duty to cover such damages. Finally, as evidence that the legislature did not intend insurance coverage such as Dalrymple's to be included within the scope of underinsurance coverage, plaintiffs cite to § 543(d) which requires benefits awarded through an underinsured policy to be decreased by any other benefits awarded through workman's compensation. Thus, plaintiffs conclude that when the legislature intended other insurance policies to be included in the underinsured calculation, it expressly stated as such. Allstate interprets § 541(c)(3) to indicate that the Maryland legislature intended multiple insurance policies to be included in the relevant calculation. (D.I. 93 at 6–7; 107 at 4–7) Even if such were not the case, Allstate argues that plaintiffs must exhaust Dalrymple's liability insurance prior to seeking such

benefits from Allstate. (D.I. 93 at 8) In the event that the court rules Allstate must immediately pay the Pooles an award, Allstate argues it should be entitled to subrogation to offset future recovery from Dalrymple. (*Id.*)

▮▮▮▮▮ As a threshold matter, a brief comment concerning Maryland's uninsured motorist scheme is required for clarity. Two main theories exist as to such coverage. The first, the "excess theory," determines a tortfeasor to be underinsured when the injured party's damages exceed the tortfeasor's liability coverage. The second theory, the "gap theory," defines a tortfeasor as underinsured when his or her liability insurance, although legally adequate, is less then the insured's underinsurance coverage. Maryland is a "gap theory" state. *Waters v. United States Fidelity & Guaranty Co.*, 328 Md. 700, 616 A.2d 884 (1992).

▮▮▮▮ The court agrees with Allstate that § 541(c) contemplates the liability of several tortfeasors and their respective insurance coverage policies. The language of the statute—"the **sum** of the limits of liability under **all valid and collectible liability insurance policies, bonds, and securities** applicable to the bodily injury or death"—unambiguously asserts this. Thus, it appears that should Dalrymple be determined to be a tortfeasor in this action, and should his insurance be determined a "valid and collectible liability insurance policy," then § 541(c) requires his inclusion in the determination of the applicability of the underinsured coverage owned by the Pooles and issued by Allstate.

▮▮▮ Dalrymple, however, has yet to be determined a tortfeasor in this litigation. Therefore, it is premature to determine the remaining liability, if any, of Allstate at this time. Thus, the court shall deny both motions for summary judgment.[7]

### C. Estate's Motion to Dismiss

Dalrymple filed a third party complaint against the Estate in December of 1993.

---

7. The parties shall inform the court no later than at the pretrial conference of their respective positions as to whether Allstate should remain in the

case through trial, given the current posture of the litigation.

The Estate now moves to dismiss this complaint arguing that it is time barred by Section 2102(a) of Title 12, Delaware Code. Dalrymple disagrees with the Estate's representation that his causes of action arose prior to Sennett's death, thereby invoking § 2102. Rather, Dalrymple asserts that his contribution claim did not arise until he was sued by plaintiffs and his indemnity claim, as a technical matter, has yet to arise. Finally, Dalrymple asserts that § 2102(f) precludes § 2102(a) from barring his claim.

■ Section 2102(a) states as follows:

All claims against a decedent's estate which arose before the death of the decedent ... whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort or other legal basis, ... if not barred earlier by other statute of limitations, are barred against the estate, the personal representative and the heirs and devisees of the decedent unless presented as provided in § 2104 of this title within 8 months of decedent's death....

Thus, if a cause of action arises prior to a decedent's death, a party has eight months to assert it against the estate.

■ Dalrymple cites to general provisions of contribution and indemnity law which state that such claims generally arise when a party has paid more than his share of a claim in a judgment or settlement. *Fehlhaber v. Indian Trails, Inc.*, 45 F.R.D. 285 (D.Del.1968); *Council of Unit Owners of Sea Colony East v. Carl M. Freeman Associates, Inc.*, C.A. Nos. 86C–AU–49 and 50, slip op. at 3, 1989 WL 40973 (Del.Super.Ct. April 11, 1989). However, such citations ignore this court's more recent ruling that a defendant has eight months to assert a contribution claim against an estate even if the actual action against the defendant has not yet commenced. *Witco Corp. v. Beekhuis*, 822 F.Supp. 1084 (D.Del.1993), *aff'd*, 38 F.3d 682 (3d Cir.1994). This would indicate that an exception to the rule outlined by Dalrymple is a situation in which a party attempts to assert a claim against an estate. The plain

language of the statute itself further supports such an interpretation by specifically including within its statute of limitations claims that are **"due or to become due, absolute or contingent."** (Emphasis added)

The court's analysis does not end here, however. Another subsection of § 2102 reads as follows:

Nothing in this section affects or prevents, to the limits of the insurance protection only, any proceeding to establish liability of the decedent or the personal representative for which he is protected by liability insurance.

12 Del.C. § 2102(f). There is no dispute that the Estate had liability insurance and said policy was paid in full to plaintiffs. The question remains as to the effect of that payment on § 2102(f). The Estate argues that because said policy is paid in full, no liability insurance policy exists and, therefore, § 2102(f) cannot be implicated as an exception to § 2102(a). Dalrymple, however, asserts, citing to caselaw from nonbinding jurisdictions which interpret the same language from the Uniform Probate Code § 3–803(c)(2), that he is only required to show the potential right to payment from the insurance policy. *Corlett v. Smith*, 107 N.M. 707, 709–10, 763 P.2d 1172, 1174–75 (Ct.App. 1988).

■ Were the court to adopt the Estate's interpretation of § 2102(f), no joint tortfeasor could ever file a third party complaint against the estate of another tortfeasor simply for the purpose of establishing the liability of the other tortfeasor, unless done within eight months of death of the other tortfeasor. Such would be the case even if the liability of the deceased tortfeasor were so obvious that the decedent's insurance paid its policy in full. The text of the statute [8] seems to intend to allow claims against an estate after the eight-month deadline only if they will not affect it financially. Therefore, Dalrymple may sue the Estate "to the limits of the insurance policy." However, it may well be the case that the insurance protection is nothing, in which instance Dalrymple can sue

---

8. The court has not found, nor have the parties directed it to, any Delaware court's interpreta-

tion of § 2102(f).

the Estate up to that amount, allowing him the sole benefit of establishing liability of the Estate.

 The Estate next argues that Dalrymple has failed to state a cause of action against it for either indemnification or contribution. With respect to indemnification, this court has noted that Delaware law provides for five situations which support a claim for indemnification. Among them, the two most applicable situations to the case at bar are:

(3) Where the one seeking indemnity has incurred liability because of a breach of duty owed to him by the one sought to be charged.

(4) Where the one seeking liability has incurred liability ... merely because of failure, even though negligent, to discover or prevent the misconduct of the one sought to be charged.

*New Zealand Kiwifruit Mktg. Bd. v. City of Wilmington,* 825 F.Supp. 1180, 1191–92 (D.Del.1993) (*citing Ianire v. University of Delaware,* 255 A.2d 687 (Del.Super.1969), *aff'd* 269 A.2d 52 (Del.1970)). This court noted in *New Zealand* that the Minnesota case upon which *Ianire* relied for including situation (4) had since been overruled. *Id.* at 1191, n. 7 (*citing Tolbert v. Gerber Indus.,* 255 N.W.2d 362 (Minn.1977)). This court questioned, without resolving, whether situation (4) remained an available basis for an indemnity claim under Delaware law. *Id.* More persuasive, however, on the issue of the validity of establishing a cause of action based on situation (4) is the ruling of the Delaware Supreme Court in affirming the lower court's decision in *Ianire.*

The court below ... apparently based its decision upon the concept that when two individuals jointly are negligent and the concurrent negligence contribute to the injury of another, one is the primary wrongdoer and the other is the secondary wrongdoer, or that such may be the fact. In that event, there are decisions holding that the primary wrongdoer has the duty to indemnify the secondary or passive wrongdoer for any recovery made against it by the injured party.

We think, however, that such may not be[,] for the reason that to provide for indemnification in terms of primary and secondary, or active and passive wrongdoing is to hold the two parties as joint tortfeasor with the right of contribution running between them.

*Diamond State Tel. Co. v. University of Del.,* 269 A.2d 52, 56 (Del.1970). Implicitly, therefore, the Delaware Supreme Court questioned the validity of situation (4). Although lower courts in Delaware have cited to *Ianire* as good law since *New Zealand, e.g., Council of Unit Owners of Sea Colony East v. Carl M. Freeman Associates, Inc.,* 1989 WL 40973 (Del.Super.Ct. April 11, 1989); *Cumberbatch v. Board of Trustees, Del. Tech. & Community College,* 382 A.2d 1383 (Del.Super.Ct.1978), such is not enough for this court to find it precedential. As this is a diversity case, the court has a responsibility to sit in the position of the Delaware Supreme Court and determine how that court would rule. Given its implicit rejection of situation (4) in *Diamond State Tel.,* as well as this court's questioning of *Ianire's* validity in light of *Tolbert,* this court finds that situation (4) is not an appropriate grounds for seeking indemnification.

 Dalrymple also asserts as grounds for an indemnity claim situation (3) which allows indemnity when a party "has incurred liability because of a breach of duty owed to him by the one sought to be charged." *New Zealand,* 825 F.Supp. at 1192. He cites *Rochester v. Katalan,* 320 A.2d 704 (Del. 1974), for the proposition that "a patient owes a duty to his physician to use reasonable care in the role of the patient to further the goal of successfully treating his illness." (D.I. 110 at 15) A closer review of *Rochester* indicates that the duty recognized by the Delaware courts is the more limited "common-sense duty of a patient to be truthful in describing his symptoms to a physician to whom he looks for assistance. It is the duty of a patient to use such care as a man of ordinary prudence would ordinarily use in circumstances like his own...." *Rochester,* 320 A.2d at 709.[9] Nowhere in his complaint

9. *Rochester* cites to 41 Am.Jur. § 80, to support its position. While this section does address a

does Dalrymple allege that Sennett was untruthful to him in describing her symptoms. Therefore, he has failed to allege a duty to him which Sennett breached. Consequently, Dalrymple may not state a cause of action based upon situation (3). No cause of action in indemnity exists.

The Estate's final argument is that Dalrymple has failed to state a cause of action in contribution because he neglected to include an allegation in his third party complaint indicating a claim of contribution against the Estate. Dalrymple disputes the Estate's argument and asserts that his complaint is sufficient under acceptable standards of notice pleading.

■ The court is inclined to agree with Dalrymple. In his prayer for relief, Dalrymple states that he "demands judgment against Third Party Defendant **to the extent any judgment or verdict is** rendered against defendant Dalrymple." (D.I. 6 at 12) Such is sufficient to allege both an indemnity and contribution claim. As noted by Dalrymple, Section 6306 of Title 10, Delaware Code, states that:

> A pleader may ... state a cross-claim against a coparty any claim that the coparty is or may be liable to the cross claimant for **all or part** of a claim asserted in the action against the cross claimant.

(Emphasis added) Therefore, when Dalrymple requested payment **"to the extent** any judgment or verdict is rendered against Dalrymple," he adequately pled a claim for contribution. Dalrymple's request to amend his complaint is unnecessary given the court's ruling. Fed.R.Civ.P. 8(f).

## IV. CONCLUSION

For the reasons stated herein, Dalrymple's motion for summary judgment shall be granted in part and denied in part. Plaintiffs' motion for summary judgment shall be granted in part and denied in part. Allstate's motion for summary judgment shall be granted. The Estate's motion for summary judgment shall be granted in part and

denied in part. An order consistent with this opinion shall issue forthwith.

---

duty of ordinary prudence of the patient to submit to his or her doctor's care, it does so in the context of the defense of contributory negligence

in a medical malpractice action. Therefore, its reasoning is not entirely applicable to the situation at bar.